2019 IL App (1st) 180724

SIXTH DIVISION
MARCH 29, 2019

No. 1-18-0724

| | | |
|---|---|---|
| AXION RMS, LTD., an Illinois Corporation, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CH 01590 |
| | ) | |
| MICHAEL BOOTH, | ) | Honorable |
| | ) | Franklin W. Valderama, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff-appellant, Axion RMS, Ltd. (Axion), appeals from a judgment of the circuit court of Cook County, dismissing its complaint against the defendant-appellee, Michael Booth (Booth), and denying it leave to file an amended complaint. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3     Axion,[1] an Illinois corporation engaged in the business of insurance brokerage and employee benefits consulting, filed a verified complaint[2] against Booth, its former president (the verified complaint). The verified complaint contained four claims: counts I and II were breach of

---

[1]Axion was known as Mid American Group, Inc., until 2014, when it was restructured into Axion RMS, Ltd.

[2]A pleading may be verified by an oath of the party filing it. 735 ILCS 5/2-605 (West 2016). "In pleadings which are so verified, the several matters stated shall be stated positively or upon information and belief only, according to the fact." *Id.* Any admission contained in the original verified pleading, which is not the product of mistake, is considered to be a binding judicial admission. *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App (1st) 111296, ¶ 19.

contract claims, count III was a tortious interference claim, and count IV was an accounting claim. Counts I, II, and IV were based on alleged violations of a noncompete clause in a five-year employment agreement between Axion and Booth (the employment agreement).

¶ 4    Paragraphs 5 and 6 of the verified complaint stated:

"5. In or about October 2010, Axion RMS hired Booth as Vice President of Sales with a starting salary of $300,000. In 2014, Booth was promoted to President of Axion RMS and was paid a salary of $500,000. In connection with his employment, Booth and Axion RMS entered into an Employment Agreement ***. A copy of [the employment agreement] is attached hereto as Exhibit 1.

6. On or about November 12, 2014, Booth also became a shareholder of Axion RMS."

The verified complaint attached the employment agreement, which was signed by Booth and the chief executive officer of Axion. The employment agreement stated that it was entered into on January 1, 2015. The verified complaint cited a noncompete clause in the employment agreement that restricted Booth from soliciting Axion's clients or employees during his employment and for a period of two years following termination of his employment.[3]

¶ 5    The verified complaint further alleged the following, in part:

"9. The [employment agreement] was adequately supported by consideration by virtue of Booth's continued employment with Axion RMS and the compensation paid by Axion RMS during his employment.

---

[3]The employment agreement stated that Booth was an "at will" employee, meaning that Booth could resign at any time and that Axion could terminate his employment at any time, with or without cause.

10. Pursuant to [the employment agreement], Booth agreed that he would pay all of his earnings from any violation of the non-compete provision to Axion RMS, which the parties agreed would be calculated as the present value of revenues generated from the loss of a client's business over a ten year period.

\* \* \*

14. In or about December 2015, Booth resigned from his position with Axion RMS to begin work at HUB International Limited ('HUB'), a competitor of Axion RMS. In his resignation letter, Booth stated, 'I have a signed copy of my Axion employment agreement and I understand the terms.' \*\*\*

15. On information and belief, upon resigning from Axion RMS and joining HUB, and in direct violation of [the employment agreement], Booth began directly or indirectly contacting and soliciting Axion RMS's existing clients and customers he was in contact with while employed by Axion RMS, many of whom had existing Broker of Record Agreements with Axion RMS.

16. On information and belief, Booth also contacted and solicited Axion RMS employees Jason Bryan \*\*\*, Michelle Carlson \*\*\*, Suzanne Taylor \*\*\* and Thomas Judge \*\*\* to leave Axion RMS and join him at HUB. Booth's solicitation of Bryan, Carlson, Taylor and Judge was in direct violation of Section 7.1(c) of [the employment agreement]."

¶ 6 Booth filed a motion to dismiss the verified complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). His motion cited numerous cases from this court holding that, where the only consideration given to an employee in exchange for signing a noncompete covenant is continued employment, the employee must work for at least two years after signing the noncompete covenant in order for there to be adequate consideration and to render the noncompete covenant enforceable. Booth's motion argued, *inter alia*, that the noncompete clause in the employment agreement he signed lacked adequate consideration because he resigned from Axion less than a year after signing it and, therefore, the verified complaint was defective on its face.

¶ 7 Axion responded to Booth's motion to dismiss by arguing that the court should not apply a "bright-line test" of two years of employment, but instead a "totality of the circumstances test" to determine adequate consideration. Axion claimed that Booth's promotion to president and shareholder should be considered in determining whether there was adequate consideration given to Booth in exchange for signing the noncompete clause in the employment agreement.

¶ 8 Following a hearing on Booth's motion to dismiss, the trial court granted the motion, in part. In its written memorandum and order, the trial court stated:

> "Axion does not contend that [the employment agreement's noncompete clause] that prohibits Booth from soliciting Axion's employees and customers are supported by any traditional form of consideration contemporaneous with Booth's execution of [the employment agreement]. Instead, Axion relies exclusively on Booth's continued employment after he executed [the employment agreement]. *** [T]he general rule *** is that 'continued

employment for two years or more constitutes adequate consideration.' *McInnis* [*v. OAG Motorcycle Ventures, Inc.*], 2015 IL App (1st) 142644, ¶ 27. Indeed, Illinois courts have consistently found restrictive covenants to be supported by adequate consideration when based on the employee's continued employment for more than two years."

The trial court acknowledged that there were predictions from several federal district court cases that our supreme court would adopt a totality of the circumstances approach to determine adequate consideration for restrictive covenants. Nonetheless, the trial court recognized that our supreme court has not yet adopted that approach. Therefore, the trial court was bound to follow the decisions from this court, holding that where restrictive covenants are supported by adequate consideration based exclusively on continued employment, the employee's employment must continue for at least two years after execution of the restrictive covenant. The court therefore found that Booth's employment for less than a year after he entered into the employment agreement at issue was insufficient to constitute adequate consideration.

¶ 9     The court concluded that due to the lack of adequate consideration, the noncompete clause between Axion and Booth was unenforceable. It consequently found that Axion could not sufficiently plead counts I, II, and IV (breach of contract and accounting claims) of its verified complaint and dismissed those counts with prejudice. The court also dismissed count III, the tortious interference claim, without prejudice and granted Axion leave to file an amended complaint for that count.[4]

---

[4]However, the tortious interference count is not at issue in this appeal.

¶ 10    Axion subsequently filed a first amended verified complaint, which contained a single count for tortious interference. At the same time, Axion also filed a combined motion to reconsider the court's order dismissing counts I, II, and IV and for leave to file a second amended complaint (the combined motion). The combined motion argued that the court should reconsider its order and instead dismiss counts I, II, and IV *without prejudice*, so that Axion could amend its complaint to cure the pleading defects regarding adequate consideration. The combined motion attached a proposed second amended complaint (the proposed amended complaint), which sought to plead adequate consideration in order to render the noncompete clause enforceable. The proposed amended complaint stated, in relevant part:

"5. In or about October 2010, Axion RMS, then known as Mid American Group, Inc., hired Booth as Vice President of Sales with a starting salary of $300,000, which he earned through December 31, 2014. Booth executed an employment agreement at or about the time he was hired.

6. In 2014, Mid American Group, Inc, was restructured and subsequently became known as Axion RMS, Ltd.

7. In connection with the restructuring, on or about November 12, 2014, Booth became a shareholder of Axion RMS. See attached Exhibit 1.

8. Also in connection with the restructuring, Booth and Axion RMS executed a new employment agreement ('Booth Employment and Non-Compete Agreement'), a copy of which is attached hereto as Exhibit 2.

9. The Booth Employment and Non-Compete Agreement was entered into on January 1, 2015, which coincided with the first date that Axion RMS began operating as Axion RMS, Ltd.

* * *

13. Booth's salary was increased from $300,000 to $500,000 contemporaneous with the effective date of the Booth Employment and Non-Compete Agreement as additional compensation for execution of the Employment and Non-Compete Agreement, including its restrictive covenants. This increased salary was memorialized in Paragraph 2.2 of the Booth Employment and Non-Compete Agreement ***.

14. The first date that Booth received his increased salary was January 1, 2015, the same date as, and contemporaneous with, the date the Booth Employment and Non-Compete Agreement took effect; See attached Exhibit 3, group exhibit of payroll registers for Booth showing pay increase taking effect on January 1, 2015.

15. Also in connection with the restructuring and execution of the Booth Employment and Non-Compete Agreement and its restrictive covenants, Booth was promoted from Vice President of Sales to President. This promotion was memorialized in Paragraph 2.2 of the Booth Employment and Non-Compete Agreement ***.

16. Booth's increased $500,000 salary and promotion to

President are both contained within the four corners of the Booth Employment and Non-Compete Agreement.

17. The restrictive covenants under the Booth Employment and Non-Compete Agreement were adequately supported by consideration by virtue of, among other things, Booth's additional compensation and promotion contemporaneous with the effective date of the Booth Employment and Non-Compete Agreement and Booth's execution of this agreement,

18. Booth's increased salary and promotion constitute new consideration for the Booth Employment and Non-Compete Agreement and its restrictive covenants. In addition, Booth also became a shareholder of Axion RMS in connection with the restructuring."

¶ 11    Following a hearing, the trial court entered an order denying Axion's combined motion to reconsider and for leave to file its proposed amended complaint. In its ruling, the court focused on the fact that Axion originally filed a *verified* complaint, which pled that Booth had been promoted and given a raise in 2014, prior to the execution of the employment agreement on January 1, 2015. The court explained:

"[Axion's original] verified complaint stated on paragraph 5 that ['] in or about October 2010, Axion RMS hired Booth as vice-president of sales with a starting salary of $300,000. In 2014 Booth was promoted to president of Axion RMS and was paid a salary of [$]500,000[']. In the proposed [amended complaint], paragraph 5

reads as follows: [']In or about October 2010, Axion RMS, then known as Mid-American Group, Inc., hired Booth as vice-president of sales with a starting salary of 300,000, which he earned through December 31 of 2014.['] Having considered that statement, I am left with the inescapable conclusion that the [proposed amended] complaint is not providing additional facts as has been suggested, but rather seeking to contradict what was previously stated in the original [verified] complaint, and that is that in the entire year of 2014, Booth was paid a salary of [$]500,000, which is what is in the original [verified] complaint. No mention is made whatsoever in that pleading that he earned a portion of that salary or that he earned only [$]300,000 in 2014. And I don't see how a reasonable reading of that paragraph would lead one to conclude that he earned something less than [$]500,000 in [2014]. The reason why that is a significant issue for this court is that Illinois case law is well settled that any admission contained in an original verified pleading, which is not the product or mistake or inadvertence, is a binding judicial admission. Such an admission has the effect of withdrawing a fact from issue and dispensing wholly with the need or proof of a fact."

¶ 12    Axion then voluntarily dismissed count III of its first amended complaint, the sole remaining claim in its case. This appeal followed.

¶ 13                                  ANALYSIS

¶ 14    We note that we have jurisdiction to review this matter as Axion filed a timely notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 15    Axion presents the following two issues on appeal: (1) whether the court erred in dismissing its verified complaint and (2) whether the court erred in denying it leave to file its proposed amended complaint.

¶ 16    As an initial matter, we address Booth's motion to strike portions of Axion's reply brief. Booth's motion to strike makes two arguments. First, Booth argues that this court should strike 13 pages from Axion's reply brief because Axion did not properly raise the arguments on those pages in its opening brief in accordance with Illinois Supreme Court Rule 341(h)(7) (eff. Nov. 1, 2017). Specifically, Booth contends that Axion did not "meaningfully address" the judicial admission issue in relation to its argument that the court erred in denying it leave to file its proposed amended complaint. However, we find that Axion did properly address the judicial admission issue in its opening brief. Axion dedicated three pages of its opening brief to an argument titled, "There is No Factual Inconsistency Between Axion's Original Complaint and its Proposed Second Amended Complaint." Although, as Booth points out, Axion's opening brief only used the phrase "judicial admission" once, Axion made arguments clearly related to the judicial admission issue. We acknowledge that the arguments in Axion's reply brief regarding judicial admission are more developed, but they are primarily in response to the arguments made in Booth's brief. Nevertheless, as discussed, Axion *did* address the judicial admission issue in its opening brief. Therefore, Axion did not violate Rule 341(h)(7), and we reject this argument by Booth.

¶ 17    Second, Booth's motion to strike argues that this court should not consider the following statement made by Axion in its reply brief: "Notably, there is no evidence as to when Booth actually executed the [employment] agreement, only that its effective date was January 1, 2015." Booth argues that Axion never raised this argument in the trial court and, therefore, Axion has forfeited it on appeal. See *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8 ("It is well-settled law in Illinois that issues, theories, or arguments not raised in the trial court are forfeited and may not be raised for the first time on appeal."). However, as Axion points out, in the facts section of its opening brief, Axion stated that the employment agreement "was made as of" or "entered into on" on January 1, 2015, while Booth stated numerous times in his brief that he "signed" the employment agreement on January 1, 2015. So Axion's statement that there is no evidence as to when Booth actually signed the employment agreement was clearly in response to the multiple statements made in Booth's brief regarding the execution date of the employment agreement. See *Rome v. Commonwealth Edison Co.*, 81 Ill. App. 3d 776, 780 (1980) (points raised for the first time in an appellant's reply brief are not forfeited where those contentions serve to rebut arguments advanced by the appellee in his brief); *Bowler v. City of Chicago*, 376 Ill. App. 3d 208, 218 (2007) ("Issues raised for the first time in an appellant's reply brief are deemed [forfeited] on appeal [citation], unless responsive to an argument raised in the appellee's brief."). We therefore also reject this argument by Booth. Accordingly, we deny his motion to strike in its entirety.

¶ 18    Turning to the merits, we now consider Axion's first argument: that the court erred when it granted Booth's motion to dismiss pursuant to section 2-615 of the Code and dismissed its verified complaint with prejudice. Axion contends that the court "erroneously applied a bright line two-year rule" to determine whether the noncompete clause in the employment agreement

was supported by adequate consideration. In Axion's view, the court improperly limited itself to considering only the length of time Booth worked at Axion after signing the employment agreement. Axion claims that the court should have instead applied a "totality of facts and circumstances" test, which would have allowed the court to consider Booth's salary increase, newly issued stock, and promotion as adequate consideration to render the noncompete clause enforceable.[5]

¶ 19     While a plaintiff is not required to prove his case in the pleading stage, he must allege sufficient facts to state all the elements which are necessary to sustain his cause of action. *Visvardis v. Eric P. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007). A trial court should dismiss a complaint under section 2-615 only if it is readily apparent from the pleadings that there is no possible set of facts that would entitle the plaintiff to the requested relief. *Quinn v. Board of Education of the City of Chicago*, 2018 IL App (1st) 170834, ¶ 57. "The question for the court is whether the allegations of the complaint, when construed in the light most favorable to the plaintiffs, are sufficient to establish the cause of action." *Id.* We review *de novo* the trial court's dismissal of a complaint pursuant to section 2-615. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 735 (2009).

¶ 20     In support of its argument that the court should have applied a totality of the circumstances test, Axion directs us to *McInnis v. OAG Motorcycle Ventures, Inc.*, 2015 IL App

---

[5]Axion also claims that during the hearing on Booth's motion to dismiss, Axion explained to the court that the noncompete clause was executed as part of the same restructuring transaction that included Booth's promotion, salary increase, and receipt of stock. Axion argues that these facts, if proven at trial, would have entitled it to relief, and so the court therefore erred in dismissing its complaint. However, as discussed *infra*, a motion to dismiss pursuant to section 2-615 of the Code alleges that a complaint is deficient *on its face*, and so any oral arguments providing additional facts outside the four corners of the complaint are not considered by the trial court. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25 ("In ruling on a section 2-615 motion, the court *only* considers (1) those facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record." (Emphasis added.)).

(1st) 142644. In *McInnis*, the former employee, like Booth in this case, argued that the restrictive covenant that he signed was unenforceable because he quit his job less than two years after signing it. *Id.* ¶ 23. And the employer in that case, like Axion, argued that the case presented "a unique factual situation that requires application of a fact-specific approach in determining the adequacy of consideration." *Id.* ¶ 28. In agreeing with the former employee, this court noted the well-established principle in Illinois that continued employment for two years or more constitutes adequate consideration to enforce a restrictive covenant. *Id.* ¶ 27. This court did acknowledge that trial courts "are not limited to a numerical formulation," and that courts may engage in "a fact-specific approach to determine whether there [is] consideration." *Id.* ¶ 36. However, we clarified that a fact-specific approach, or a totality of the circumstances test as Axion refers to it, would not apply in a case where the court has determined that *no other consideration*, other than the continued employment, was given to the employee. *Id.* ¶¶ 47-48. As the court in this case determined that Booth was not given any additional consideration beyond continued employment, Axion's reliance on *McInnis* is misplaced.

¶ 21    Indeed, it is well-established by this court that a promise of continued employment for an at-will employee is adequate consideration to render a restrictive covenant enforceable, as long as there is at least two years of continued employment following the execution of the restrictive covenant. *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, ¶ 14; *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 729 (2008). And where no additional compensation, such as a raise or special benefits, is given to the employee, and the employee resigns less than two years after executing the restrictive covenant, the consideration is

inadequate and the restrictive covenant is unenforceable. *McInnis*, 2015 IL App (1st) 142644, ¶ 38; *Prairie Rheumatology Associates, S.C. v. Francis*, 2014 IL App (3d) 140338, ¶¶ 15-19.[6]

¶ 22    Here, Axion's verified complaint plainly stated: "The [employment agreement] was adequately supported by consideration by virtue of Booth's continued employment with Axion RMS and the compensation paid by Axion RMS during his employment." The verified complaint did not allege any additional consideration given to Booth in exchange for him signing the noncompete clause in the employment agreement. Although the verified complaint mentioned Booth's promotion to president and shareholder, it did not allege any connection between those promotions in 2014 and the execution of the employment agreement in 2015. If Axion had alleged additional consideration in its verified complaint, the court would have had additional facts and information to consider. Instead, Axion pled in its verified complaint that the *only* consideration given to Booth was his continued employment. This clearly limited the scope of the court's analysis, within the context of existing case law, to the length of Booth's continued employment.

¶ 23    Axion argues that its verified complaint referenced the employment agreement and attached it, which in turn referenced the adequate consideration. However, the record is clear that the employment agreement cited Booth's continued employment as the only consideration. A promotion or salary increase is not mentioned anywhere in the employment agreement. And notably, the employment agreement included an integration clause, which stated that "[t]his instrument contains the *entire* Agreement of the parties pertaining to the subject matter hereof."

---

[6]Axion encourages us to follow "[r]ecent federal court decisions applying Illinois law" that "provide persuasive authority to reject any bright line rule and instead apply the 'totality of the facts and circumstances' test." However, while federal district cases can provide guidance and act as persuasive authority, we are not bound to follow their decisions. *Reichert v. Board of Fire & Police Commissioners*, 388 Ill. App. 3d 834, 845 (2009).

(Emphasis added.) Thus, Axion cannot later argue that the parties agreed to consideration outside of the employment agreement. We note also that Axion, as the employer, drafted the employment agreement, including the integration clause.

¶ 24    In sum, Axion pled in its verified complaint that the only consideration given to Booth was his continued employment, and that he resigned less than two years later. This is inadequate consideration under existing case law. Consequently, it is readily apparent from the face of Axion's verified complaint that there is no possible set of facts which would render the noncompete clause in the employment agreement enforceable.[7] Thus, the court did not err in dismissing Axion's verified complaint.

¶ 25    Axion next argues that the court erred in denying it leave to file its proposed amended complaint. Axion claims that its proposed amended complaint cured any defects in its verified complaint because the proposed amended complaint alleged adequate consideration given to Booth for signing the noncompete clause, specifically the issuance of stock, a promotion, and an increased salary. Axion further argues that the court erred in holding that the proposed amended complaint was inconsistent with its original verified complaint. Axion avers:

> "The [verified complaint] alleged that Booth's salary was increased in 2014. The [proposed amended complaint] clarified that the increased salary was effective January 1, 2015, to coincide with the effective date of [the employment agreement] and a corporate restructuring. There is nothing inconsistent with a salary increase being agreed to in 2014 but taking effect on January 1, 2015."

---

[7] During oral arguments, Axion's counsel argued, for the first time, that Axion was entitled to an evidentiary hearing to determine if it had pled adequate consideration. However, as discussed *supra*, in ruling on a section 2-615 motion, the court *only* considers (1) those facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. Thus, an evidentiary hearing to determine whether Axion had pled adequate consideration would be inappropriate.

¶ 26    Section 2-616(a) of the Code provides that amendments to complaints may be allowed at any time before judgment, on just and reasonable terms. 735 ILCS 5/2-616(a) (West 2012). The decision to allow an amendment to a pleading rests within the sound discretion of the trial court, and absent an abuse of discretion, we will not disturb the trial court's decision. *Mandel v. Hernandez*, 404 Ill. App. 3d 701, 705 (2010). A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 93. In order to determine whether the trial court abused its discretion in denying a party leave to file an amended pleading, "we consider the following factors: '(1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend.' "[8] *CIMCO Communications, Inc. v. National Fire Insurance Co. of Hartford*, 407 Ill. App. 3d 32, 38 (2011) (quoting *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 432 (1999)). A sworn statement of fact in a verified pleading remains binding on a party even after an amendment, and the party cannot subsequently contradict the factual allegation. *L.D.S., LLC v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379, ¶ 35. Consequently, if the factual allegations in a proposed amended complaint contradict those in a verified complaint, the allegations in the verified complaint remain binding and the party may not file the proposed amended complaint. *Id.*

---

[8]Axion additionally argues that the trial court "improperly applied a motion to reconsider standard" to the proposed amended complaint. Axion's argument appears to be based on the fact that the court did not orally list all of these factors in its ruling. However, the record demonstrates that the court nevertheless still considered all of the factors required for its analysis.

¶ 27    We confine our analysis to the first factor, whether the proposed amended complaint would cure the defective pleading, as it is the only one in dispute. Axion's verified complaint was dismissed because it failed to allege adequate consideration to render the noncompete clause enforceable under Illinois law. After reviewing the proposed amended complaint, it undoubtedly cured that defect by pleading that Booth was given a promotion and a raise as consideration for executing the noncompete clause.[9] Generally, under these circumstances, a trial court would abuse its discretion by denying the party leave to file the proposed amended complaint. See *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 274-75 (1992) (if, after comparing the two complaints, the defects have clearly been cured, the proposed amended complaint should be allowed).

¶ 28    However, Axion's original complaint was a *verified complaint*, which constitutes a binding judicial admission. *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 20. See also *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010) ("[j]udicial admissions are formal admissions in the pleadings that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. [Citation.] *** [A]ny admissions that are not the product of mistake or inadvertence *** bind the pleader throughout the litigation."). Once Axion filed its verified complaint, the statements alleged were binding judicial admissions that it could not later contradict. See *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶ 45 (a party cannot create a factual dispute by contradicting a previously made judicial admission). Any contradictions to previously made judicial admissions are akin to perjury. See *Roti v. Roti*, 364 Ill. App. 3d 191,

_____

[9]We note that, despite Axion's arguments to the contrary, the proposed amended complaint did not plead that Booth received stock as consideration for executing the employment agreement.

200 (2006) (the purpose of the judicial admission rule is to remove the temptation to commit perjury). It should be noted that Axion chose the vehicle of a verified complaint to challenge Booth, and Axion is therefore bound by the attendant principles of law surrounding a verified complaint.

¶ 29 The focus of the trial court's analysis in this case was the inconsistencies between paragraph 5 in the verified complaint and paragraph 5 in the proposed amended complaint. The relevant paragraph from the verified complaint provides as follows:

> "In or about October 2010, Axion RMS hired Booth as Vice President of Sales with a starting salary of $300,000. In 2014, Booth was promoted to President of Axion RMS and was paid a salary of $500,000. In connection with his employment, Booth and Axion RMS entered into an Employment Agreement ***. A copy of [the employment agreement] is attached hereto as Exhibit 1."

In comparison, the relevant paragraph from the proposed amended complaint states:

> "In or about October 2010, Axion RMS, then known as Mid American Group, Inc., hired Booth as Vice President of Sales with a starting salary of $300,000, which he earned through December 31, 2014. Booth executed an employment agreement at or about the time he was hired."

¶ 30 We agree with the trial court that these two paragraphs are clearly inconsistent. The relevant paragraph in the verified complaint alleged that Booth was given a raise and *paid $500,000 in 2014*. It does not even state *when* in 2014 the raise was given; it could have been as

early as January 1, 2014, based on the plain language. Meanwhile, the relevant paragraph in the proposed amended complaint alleged that Booth was *paid $300,000 through the end of 2014*. It is arguable that the relevant paragraph in the verified complaint is also slightly ambiguous. Axion urges us to read it as though Booth was offered his raise in 2014, which took effect on January 1, 2015. However, the plain language of the verified complaint states only that Booth was given a raise in 2014, so that is how we must read it. We again emphasize that Axion chose the vehicle of a verified pleading for its complaint.[10] And in verified pleadings, it is important for the language to be precise. See *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 102 (judicial admissions are deliberate, clear, unequivocal statements).

¶ 31 Interestingly, during oral arguments, the issue arose of whether Axion had argued before the trial court that the judicial admission in its verified complaint was the product of a mistake or inadvertence. See *Nissan Motor Acceptance Corp.*, 2012 IL App (1st) 111296, ¶ 19 (every admission contained in a verified pleading is considered to be a binding judicial admission, unless it is the product of a mistake or inadvertence). Axion claimed during oral arguments that it had in fact argued that the judicial admission in its verified complaint was a mistake or inadvertence before the trial court, and cited a page in the record that contains the following statement from the hearing on its combined motion:

> "[W]e do believe there's not an inconsistency, but subject to, you
>
> know, Your Honor's ruling, a fair reading of the reply brief does
>
> indicate that a clear error was made. If that is—if that sentence is

---

[10]During oral arguments, in response to this court's inquiry regarding the choice of a verified complaint, Axion's counsel suggested that they filed a verified complaint because they were considering seeking injunctive relief.

construed as saying he was paid, you know, for the entirety of 2014, $500,000, that—there's documentation that we have and plan to attach as an exhibit [the payroll registers], but is described in the body of the proposed amended pleading that his paystubs conclusively show that he was paid the $300,000 for the last payment—pay period of 2014, and paid *** [$]500,00 effective on January 1[, 2015]. So under a fair reading of the pleading, I would say that that is illustrative of, you know, an error. But having said that also, there's additional new consideration, which is argued—"

This passive verbal mention, which was akin to a passing reference, was insufficient to properly raise the issue of mistake or inadvertence so that the trial court could consider it. See *Robertsson v. Misetic*, 2018 IL App (1st) 171674, ¶ 21 (an argument must be properly raised before the trial court or else it is forfeited). Notably, immediately after mentioning the issue of mistake or inadvertence, Axion shifted its argument back to its original theme of additional consideration and a totality of the circumstances test, as that had been the thrust of its argument in its combined motion. Axion had ample opportunity to properly raise the issue of mistake or inadvertence before the trial court, but failed to do so. To the extent that it attempted to do so by passing reference during oral arguments before this court, that effort fails. Axion accordingly forfeited this argument.

¶ 32    In sum, the relevant portions of the proposed amended complaint are inconsistent with the previously made judicial admissions in the verified complaint. A verified complaint is made under oath and cannot be casually changed as may be expedient to circumvent a motion to

dismiss. Thus, we find that the trial court did not abuse its discretion in denying Axion leave to file its proposed amended complaint.

¶ 33                                          CONCLUSION

¶ 34     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 35     Affirmed.