2023 IL App (3d) 220132

Opinion filed May 22, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| MIDWEST LENDING CORPORATION, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-22-0132 |
| | ) | Circuit No. 21-L-209 |
| | ) | |
| JOHN HORTON and PRIMELENDING | ) | The Honorable |
| COMPANY, | ) | David W. Schwartz, |
| | ) | Judge, Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment and
opinion.

_____

**OPINION**

¶ 1        The parties entered into two agreements relating to the employment of defendant John

Horton by plaintiff Midwest Lending Company (Midwest). The second agreement included a

nonsolicitation provision. Seven months after he was hired, Horton's employment with Midwest

was terminated, and he began working for a new firm. After Horton solicited another employee

to leave Midwest and start work at his new firm, Midwest filed the first of three complaints

alleging that he had breached the nonsolicitation provision.

¶ 2    In response to those complaints, Horton filed motions to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)), arguing that the complaints failed to establish the requisite consideration. The trial court granted those motions, ultimately dismissing Midwest's second amended complaint with prejudice. We now affirm the dismissal of that complaint.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiff Midwest entered into an at-will employment agreement with defendant John Horton on March 5, 2020. Under that agreement, Horton's base compensation was $100,000 per year, plus numerous benefits that were outlined. Although the agreement stated that Horton's starting date was "4/1/2019 (Adjustment as of 1/1/2020)", the parties agree that the stated year was incorrect and his actual start date was April 1, 2020. However, Horton was to receive compensation at his contracted salary rate starting January 1, 2020. On March 24, the parties entered into a "Confidentiality and Non-Solicitation Agreement," which stated in relevant part:

> "Non-Solicitation. To the extent permitted by applicable law, during Employee's employment with the Company and for a period of twelve (12) months following the termination of Employee's employment for any reason (such period being referred to as the 'Restricted Period'). Employee (i) will refrain from directly or indirectly employing, attempting to employ, recruiting or otherwise soliciting or inducing (or assisting others in soliciting, inducing or influencing) any employee, agent, or consultant of the Company or its affiliates with whom Employee had contact or of whom Employee became aware during his or her employment to leave employment with the Company and/or to terminate

2

his or her remunerative relationship with the Company as an agent or consultant of/to the Company; *** or otherwise modify adversely its business relationship with the Company or its affiliates."

¶ 5    Horton's employment with Midwest was terminated on November 6, seven months after it began, and he subsequently began working for codefendant PrimeLending Company (PrimeLending). Subsequently, Horton successfully solicited a Midwest employee, Colleen Rudnick, to leave her employment with Midwest and start working at PrimeLending.

¶ 6    In February 2021, Midwest filed a two-count complaint in the Du Page County circuit court, alleging in count I that Horton breached his contract with his former employer by soliciting Rudnick to join PrimeLending. In count II, Midwest requested an accounting to determine the damages to be awarded for Horton's alleged breach. Horton filed a motion to dismiss the complaint pursuant to section 2-615 of the Code (*id.*), arguing that the nonsolicitation agreement was unenforceable as a matter of law because it was not supported by adequate consideration. Horton asserted that Illinois case law requires "at least two years of continued employment following the execution of the restrictive covenant" or other consideration to enforce a restrictive covenant in an employment agreement. *Axion RMS, Ltd. v. Booth*, 2019 IL App (1st) 180724, ¶ 21. The trial court held a hearing on the motion and dismissed the complaint without prejudice, finding that it failed to identify any consideration.

¶ 7    Midwest filed a first amended complaint, which was identical to the original one except for the additional allegation in count I that Midwest paid Horton "a $25,000.00 signing bonus" that provided consideration for the parties' employment agreement. Horton filed a section 2-615 motion to dismiss, again asserting that the nonsolicitation agreement was not supported by adequate consideration. After a hearing, the trial court granted Horton's motion to dismiss

without prejudice, concluding that the amended complaint did not establish adequate consideration when it failed to allege that the "signing bonus" "was specifically in exchange for the non-compete, non-solicitation agreement."

¶ 8        On October 14, 2021, Midwest filed its second amended complaint. That complaint was substantially identical to its prior filings except for the addition in count I of the allegation that Horton's offer of employment by Midwest "provided for consideration in the amount of $25,000.00 in exchange for Defendant's acceptance of its terms and agreement of employment contract, including the signing of a non-solicitation agreement prior to the beginning of his term as Director of Strategic Growth." Horton filed a section 2-615 motion to dismiss, arguing that the second amended complaint continued to lack adequate consideration to support the enforcement of the nonsolicitation provision. After a hearing, the trial court dismissed Midwest's second amended complaint with prejudice, concluding that the supporting documents did not show "that the $25,000 signing bonus paid to defendant when he joined the company is consideration." Midwest filed a timely notice of appeal.

¶ 9                                II. ANALYSIS

¶ 10        Midwest raises two issues on appeal: (1) whether the trial court erred by dismissing count I of its second amended complaint for want of consideration and (2) whether the trial court erred by dismissing count II based on its dismissal of count I. Because a motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) attacks the legal sufficiency of Midwest's complaint, this court applies a *de novo* standard of review.

¶ 11        The consideration required for a valid and enforceable contract is a " 'bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance' " (*Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 23 (quoting *McInerney v. Charter Golf,*

4

*Inc.*, 176 Ill. 2d 482, 487 (1997))), that is " 'of benefit to one party or disadvantage to the other.' " *Id.* ¶ 23 (quoting *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977)). Generally, courts will not consider the adequacy of the consideration exchanged, only its existence. *Id.* ¶ 24. That rule is modified, however, in the case of restrictive employment covenants because the benefit of continued at-will employment may be merely illusory. *Prairie Rheumatology Associates, S.C. v. Francis*, 2014 IL App (3d) 140338, ¶ 14.

¶ 12 Here, Midwest contends that the trial court's reliance on *Axion* was misplaced because the consideration asserted there "relie[d] exclusively on [the defendant's] continued employment after he executed [the employment agreement]." (Internal quotation marks omitted.) *Axion*, 2019 IL App (1st) 180724, ¶ 8. The outcome could have been different if the plaintiff had alleged other consideration as well. *Id.* ¶ 22. Midwest argues that this case is different because Horton was a new employee, not a continuing one, who received a $25,000 "signing bonus" before starting work "in exchange for agreeing to all of the employment terms, which included the Non-Solicitation Agreement." The "signing bonus" effectively meant that Horton would receive an extra three months' salary regardless of how long he worked for Midwest, providing him with a benefit that was proportionally higher the earlier he left the company. Midwest also notes that the cases relied on by Horton and the trial court do not support the argument that the only way to establish adequate consideration for a nonsolicitation agreement is through 24 months of continued employment. See *Prairie Rheumatology*, 2014 IL App (3d) 140338, ¶ 17 (acknowledging that other forms of consideration aside from 24 months of employment could suffice to support a nonsolicitation agreement).

¶ 13 We agree with Midwest's explanation of the general legal principles that are at issue here. As the trial court noted, however, Midwest's second amended complaint failed to

demonstrate that the $25,000 "signing bonus" was specifically provided in exchange for Horton's acceptance of the nonsolicitation agreement. In that complaint, Midwest simply alleges that its employment "[o]ffer provided for consideration in the amount of $25,000.00 in exchange for Defendant's acceptance of its terms and agreement of employment contract, *including the signing of a non-solicitation agreement* prior to the beginning of his term as Director of Strategic Growth." (Emphasis added.) The offer letter signed by Horton on March 5 that contains that alleged consideration does not use the term "signing bonus." Moreover, even if the three-month retroactive salary adjustment could be properly construed as a "signing bonus," the offer letter did not mention either the "Confidentiality and Non-Solicitation Agreement" that Horton signed nearly three weeks later on March 24, nor the nonsolicitation provision contained in it that is at the heart of this case.

¶ 14        Nonetheless, Midwest asks this court to consider the March 5 and March 24 agreements in tandem so that the offer letter and "Confidentiality and Non-Solicitation Agreement" constitute two parts of a single comprehensive employment package. In support, it contends that the opposite construction would create absurd results because the integration provision in the "Confidentiality and Non-Solicitation Agreement" would invalidate all the terms previously agreed to in the offer letter but not reiterated in the later agreement. Those terms included critical subjects of the employment contract, such as Horton's salary and work benefits.

¶ 15        The integration provision states that "[the Confidentiality and Non-Solicitation] Agreement constitutes the entire agreement between the parties, contains all of the agreements between the parties *with respect to the subject matter hereof* and supersedes any and all other agreements, either oral or written, between the parties *with respect to the subject matter hereof*." The portion of the provision that is italicized shows the error in Midwest's analysis. The

6

language adopted by the parties expressly limits the intended scope of the "Confidentiality and Non-Solicitation Agreement" "to *the subject matter hereof*." Midwest's suggestion that the two agreements should be read together is contrary to the language the parties adopted in the integration provision.

¶ 16    As Midwest recognizes in its brief, the subject matters of the "Confidentiality and Non-Solicitation Agreement" and the offer letter differ substantially. The offer letter does not discuss, or even hint at, the matters addressed in the "Confidentiality and Non-Solicitation Agreement," and the reverse is also true. Thus, we reject Midwest's argument that absurdity would result if the two documents were not read together. The integration provision requires the "Confidentiality and Non-Solicitation Agreement" to be read as a separate document that contains the entirety of the parties' agreement on the unique matters addressed in it. See *Axion*, 2019 IL App (1st) 180724, ¶ 23 (construing a similarly worded integration clause when affirming the dismissal of a complaint for an insufficient showing of consideration). It does not invalidate the other terms and conditions of employment enumerated in the offer letter previously agreed to by the parties.

¶ 17    Under our case law, an enforceable complaint must specify the consideration being exchanged to support the agreement. In *Axion*, 2019 IL App (1st) 180724, ¶ 22, the court upheld the dismissal of a complaint alleging the breach of a noncompete agreement when, apart from at-will continued employment, it "did not allege *any additional consideration* given to [the defendant] in exchange for him signing the noncompete clause." (Emphasis added.) *Id.* Similarly, in *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 729 (2008), this court rejected the plaintiff's claim that an employee had

"received additional employee benefits as consideration for the restrictive covenant [when] no evidence was presented to establish *with specificity* what those benefits were or how they differed from the benefits [the worker] was already receiving as an employee of JMI. Thus, [the court] conclude[d] that the employment agreement [was] not supported by adequate consideration and that the restrictive covenant, therefore, [was] unenforceable ***." (Emphasis added.)

¶ 18    Applying that rationale here, Midwest's second amended complaint failed to establish any consideration specifically exchanged between the parties to support the "Confidentiality and Non-Solicitation Agreement." Indeed, the integration clause in the "Confidentiality and Non-Solicitation Agreement" refutes Midwest's contention that the $25,000 "signing bonus" allegedly included in the offer letter was intended, at least in part, to be consideration for Horton's acceptance of the later nonsolicitation agreement. The integration clause affirmatively establishes that the entirety of the parties' agreement addressing the nonsolicitation provision was contained within the four corners of that document. Nowhere in the "Confidentiality and Non-Solicitation Agreement" is a "signing bonus" or retroactive payment mentioned. Accordingly, we reject Midwest's argument that the "signing bonus" in the offer letter provided adequate consideration for Horton's later agreement to the nonsolicitation provision. We hold that the trial court properly dismissed Midwest's second amended complaint for want of an adequate showing of consideration.

¶ 19    Therefore, we need not address the second issue Midwest advances on appeal. That issue addresses the propriety of dismissing Midwest's request in count II for an accounting to aid it in ascertaining the damages it incurred from Horton's alleged contractual breach. Because that

8

issue is directly tied to the validity of the court's dismissal of the breach allegation in count I, which we now affirm, it is unnecessary to review the dismissal of count II.

¶ 20                                    III. CONCLUSION

¶ 21        For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 22        Affirmed.

*Midwest Lending Corp. v. Horton*, 2023 IL App (3d) 220132

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 21-L-209; the Hon. David W. Schwartz, Judge, presiding. |
| **Attorneys for Appellant:** | Richard M. Craig, of Law Offices of Richard M. Craig, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jeffrey L. Rudd and Daniel T. Corbett, of Jackson Lewis P.C., of Chicago, for appellees. |