2019 IL App (1st) 190197

No. 1-19-0197

Fourth Division
August 29, 2019

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

|  |  |  |
|---|---|---|
| JOSHUA ZALE, | ) | Appeal from the Circuit Court of Cook County. |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) | No. 2017 CH 11060 |
| v. | ) |  |
|  | ) | The Honorable |
| MORAINE VALLEY COMMUNITY COLLEGE, | ) | John Joseph Hynes, |
|  | ) | Judge Presiding. |
| Defendant-Appellee. | ) |  |
|  | ) |  |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal arises from the dismissal of plaintiff Joshua Zale's complaint against defendant Moraine Valley Community College, in which plaintiff took issue with a warning issued by the defendant college in response to a comment made by plaintiff during a theater class, claiming that the sanctions imposed on him violated his due process rights and an implied contract between plaintiff and the defendant college. Plaintiff appeals and, for the reasons that follow, we affirm.

¶ 2                                      BACKGROUND

¶ 3         On August 14, 2017, plaintiff filed a *pro se* complaint against the defendant college, alleging that he was enrolled as a student during the 2016-17 school year. Plaintiff alleged that one of the courses in which he was enrolled was an acting class, where he was given an assignment to improvise a scene in which he was to impersonate a pimp who was to persuade his prostitute to give him money. After the class, his professor informed plaintiff that he had used an unacceptable word during his performance. Plaintiff and the professor met on April 20, 2017, to discuss plaintiff's use of the word, which plaintiff alleged "was precisely within the assignment he had been given." Defendant's assistant dean of liberal arts and director of academic arts was present at the meeting and, during the meeting, "accused Plaintiff of mistreating her as a woman."

¶ 4         Plaintiff's complaint did not set forth the specific details of the incidents leading to the report against him, but the record contains an incident report entered by the assistant dean, as well as notes commemorating a conversation the defendant's dean of students had with the professor concerning the report. According to the professor, approximately six weeks before April 20, plaintiff had been involved in an improvisational scene in his theater class, in which plaintiff was in the role of a pimp and the professor was in the role of a prostitute. During the scene, plaintiff used the word "c***," and the professor instructed plaintiff not to use that word. According to the professor, the moment passed, and plaintiff did not bring it up again. However, several weeks later, on April 18, plaintiff engaged the professor in a provocative line of conversation, involving plaintiff's thoughts on Jewish people, "safe zones, affirmative action, and modern-day feminism," during which plaintiff brought up the incident from class and suggested that he could say anything he liked because it was protected by the first

amendment. Two days later, on April 20, plaintiff followed the professor into his office after they had attended a campus speaker event, stating that he wanted to " 'continue our argument from the other day.' " Plaintiff again began speaking about the first amendment and its relationship to the student code of conduct. The professor called the assistant dean and asked her to come to his office, which she did. They attempted to speak with plaintiff about "the Code [of Conduct], Title IX, and students being comfortable on campus." Plaintiff began to "argue over" the assistant dean and to interrupt her, at one point calling her a " 'little girl' " before she left the office. According to the professor, the conversation became loud enough that a colleague came over and asked them to be quieter.

¶ 5    According to the assistant dean's report, on April 20, 2017, the professor called her and asked her to come to his office, where she discovered him in conversation with a student. The professor asked her what steps he was to take when a student made inappropriate comments in a classroom, and she explained the options. The student "jumped in" and stated that the first amendment permitted him to say anything he liked, and the professor and the assistant dean "verbally shared Code of Conduct and Title IX information with the student." However, the student insisted that "it wouldn't stand up in the court of law" and stated that he was " 'smarter than the lawyers,' " at which point the assistant dean asked the student if he was in law school. According to the assistant dean, at one point, she informed the student that his behavior and words could be perceived as intimidating and bullying, and he backed up into his chair, crossed his arms, and repeatedly asked, " 'you think this is intimidating?' " Another faculty member entered the room and asked everyone to quiet down, as he had a student in the next room taking an exam, and the student replied " 'boo hoo.' " The student later asked the assistant dean if she was " 'making this a woman thing' " and referred to her as a " 'little

girl' " as she was leaving the office. The assistant dean reported that "[t]hroughout the entire conversation, the student was disrespectful towards [the professor], [the other faculty member], and [the assistant dean] and could be perceived as harassing or intimidating in various situations." As an example, the assistant dean pointed to the student's frequent habit of speaking over the professor and the assistant dean and not permitting them to speak, even after the professor raised the issue with him.

¶ 6      In his complaint, plaintiff alleged that on April 26, 2017, he received a letter from defendant's dean of students,[1] and, after receiving the letter, plaintiff "demanded that the individuals who were accusing him of misconduct be present at any hearing which was to be held regarding the charges against him." The dean denied plaintiff's request, and as a result, plaintiff refused to participate in any hearing. On May 4, 2017, plaintiff received a letter informing him that he would be required to write an essay and that failure to do so would result in a hold being placed on his records. Plaintiff refused to write the essay, and on May 19, 2017, plaintiff received a letter informing him that a hold had been placed on his records, preventing him from enrolling in future courses. As a result, plaintiff alleged that he had been deprived of the ability to continue with his education at the defendant college.

¶ 7      Plaintiff alleged that he was deprived of procedural due process because the charges against him were conclusory and did not provide notice of the conduct with which he was charged; he was deprived of the right to confront his accusers; the hearing was to be conducted by the dean, who was not an unbiased decisionmaker; and the punishment was arbitrary and capricious. Plaintiff further alleged that the manner in which the proceedings were handled failed to comply with the defendant college's code of student conduct and that

---

[1]We describe the contents of each of the letters received by plaintiff in detail below.

the penalties imposed were done in retaliation for plaintiff's exercise of his right to free speech.

¶ 8    Plaintiff requested that the trial court grant him the following relief: (1) ordering the defendant college to rescind any and all charges against him and any penalties imposed upon him, (2) ordering the defendant college to allow plaintiff to enroll in any courses for which he is qualified, and (3) awarding plaintiff actual and punitive monetary damages.

¶ 9    Attached to the complaint were copies of the letters referenced in the complaint. First, an April 26, 2017, letter from the dean stated that, based on a report from the assistant dean and plaintiff's professor, "it is important that we discuss the incident that took place on April 20, 2017 at 1:00 PM in the F Building. Actions of this nature, if accurate, are not acceptable at the college and may have violated the Code of Student Conduct." Specifically, the letter stated that plaintiff was accused of violating two sections of the code:

"1. IV.2 Disruption or obstruction of any operation of the college, including, but not limited to, teaching, student conduct proceedings, college activities, public service functions on or off campus, or other authorized non-college activities, when the act occurs on college premises.

2. IV.3 Physical/Verbal Abuse of Harassment: Any act that threatens or endangers the health or safety of any person, including but not limited to, physical abuse, verbal abuse, threats, intimidation, harassment, coercion, intimate partner violence, and stalking. For more information, see Sexual Discrimination, Harassment, and Misconduct Policy."

The letter asked plaintiff to contact the dean to schedule a meeting regarding the matter and provided, in bold print, that "[t]his meeting must be scheduled by May 1, 2017, and held no

later than May 3, 2017. Failure to respond to this request may result in additional violations and/or a hold on your records, and a hearing will be scheduled for you."

¶ 10    Next, a May 4, 2017, letter from the dean stated that a hearing was held in plaintiff's absence on May 4, and that plaintiff had been determined "[r]esponsible" for three violations of the code of student conduct: (1) "Disruption of college operation," (2) "Physical/verbal abuse & harassment," and (3) "Failure to comply with a request to attend a meeting." As a result, two sanctions were imposed on plaintiff. First, plaintiff received a formal warning, and second, plaintiff was required to write a two-page essay "on how [the defendant college's] five core values apply to [plaintiff's] interaction with the staff members," which was to be submitted to the dean by May 18. The letter provided that plaintiff had the right to appeal any decision or sanctions within five days of the receipt of the letter and warned that "[f]ailure to complete or to abide by these sanctions by the indicated deadlines could result in a hold placed on your records or further disciplinary action."

¶ 11    Finally, a May 19, 2017, letter from the dean stated that plaintiff had not submitted the required essay. Consequently, the letter provided: "A registration hold has been placed on your record. This hold will remain in place until you have satisfactorily resolved this matter and completed the assigned sanction. Please note that failure to complete your sanction could result in further disciplinary action."

¶ 12    On October 20, 2017, the defendant college filed an answer to plaintiff's complaint.

¶ 13    On October 23, 2017, plaintiff filed an amended *pro se* complaint, which was largely identical to his prior complaint, with the exception of the additional allegation that the defendant college's sexual discrimination, harassment, and misconduct policy violated the first amendment because it was "vague, ambiguous and overbroad"; plaintiff did not specify

which sections of the policy were allegedly unconstitutional. Plaintiff also alleged that the defendant college had "cease[d] its illegal actions" upon the filing of plaintiff's lawsuit. Plaintiff's amended complaint therefore changed the relief requested to (1) ordering the defendant college to "rescind [the] current version of [the] Sexual Discrimination, Harassment and Misconduct Policy, with the purpose of preventing any future illegal actions on the part of the Defendant in associated matters concerning students and faculty" and (2) awarding plaintiff actual and punitive monetary damages.

¶ 14     Attached to the amended complaint were the same three letters that had been attached to the original complaint, as well as two additional exhibits. First, attached to the amended complaint was a chain of e-mails between plaintiff and the dean, beginning with an e-mail from the dean containing the April 26, 2017, letter in which plaintiff was notified of the reports of misconduct against him. Plaintiff replied to the e-mail the same day, stating that he would be "more than happy to schedule a meeting," provided that the assistant dean and his professor would be in attendance. Plaintiff stated that "[o]therwise I see no point" in scheduling a meeting. The dean sent a response the next day, stating that when plaintiff attended the meeting, the dean would "share with [plaintiff] the information that was forwarded from the staff members" but that they would not be present at the meeting. However, the dean stated that he "can certainly follow up with them if there are any questions or further information [the dean] might need from them." The dean informed plaintiff that "[t]his will be your opportunity to hear the information and give your response to the allegations." On the same day, plaintiff replied, stating that "[i]f the staff members will not be present, then there will be no meeting." Plaintiff also expressed impatience with the manner in which the matter was being handled and indicated that if the defendant college

attempted to impose "any consequence whatsoever in this matter, I may have to escalate this situation into the legal realm." (Emphasis omitted.) The dean responded the same day, informing plaintiff that it was "up to you if you choose to schedule a meeting with me and/or if you want to 'escalate this situation into the legal realm.' " However, he informed plaintiff that the defendant college would be "moving forward with our process by following the established procedures as outlined in the Code of Student Conduct."

¶ 15    Also attached to the amended complaint was a letter from the defendant college's attorney,[2] informing plaintiff that the defendant college disputed plaintiff's allegations and would defend against them but that he had consulted with the defendant college and that "[t]here is no hold placed on your enrollment for future classes. Should you desire to enroll in any classes for the fall 2017 academic semester, you are free to do so."

¶ 16    On December 11, 2017, the defendant college filed an answer to the amended complaint. On the same day, the defendant college filed a motion to strike portions of plaintiff's amended complaint, attaching as an exhibit a copy of the defendant college's "Sexual Discrimination, Harassment and Misconduct Policy" (sexual discrimination policy). Specifically, the defendant college sought to strike the portions of the complaint alleging that the sexual discrimination policy was unconstitutional, the prayer for relief seeking to "rescind" the sexual discrimination policy, and the prayer for relief seeking punitive damages. The defendant college claimed that plaintiff had not identified what portion of the 35-page policy allegedly violated plaintiff's rights or how it did so. The defendant college also claimed that the trial court lacked the authority to order the defendant college to engage

_____

[2]The copy of the letter attached to the amended complaint is scanned in such a way that the date of the letter is cut off. However, a full copy of the letter is located elsewhere in the record and shows that it was dated August 21, 2017.

in a wholesale rescission of the sexual discrimination policy. Finally, the defendant college claimed that plaintiff lacked standing to take any action designed to prevent " 'future illegal actions' " on the part of the defendant college, as his claim arose from a single incident resulting only in a warning. The defendant college also claimed that the prayer for relief seeking punitive damages was improper, as the defendant college was immune from any punitive damages claims.

¶ 17    On February 21, 2018, the trial court entered an order granting the defendant college's motion in part. The court found that it was undisputed that plaintiff was not enrolled at the defendant college, and did not register for classes despite the opportunity to do so, and, therefore, his original claim for injunctive relief was moot. With respect to plaintiff's claims concerning the sexual discrimination policy, the court found that plaintiff lacked standing to seek any injunctive relief as to the validity of the policy and that his request for rescission was not well-pled. The court entered and continued the motion to strike the request for punitive damages and transferred the case to the law division since the only remaining claim was based on breach of an implied contract between plaintiff and the defendant college.

¶ 18    On April 6, 2018, the defendant college filed a motion seeking to have the case transferred to the fifth municipal district. The defendant college claimed that in his initial pretrial memorandum, plaintiff indicated that he was seeking $10,000 in damages, meaning that it was a municipal department case. On April 16, 2018, plaintiff filed a response in opposition to the motion, as well as a motion for leave to amend his complaint. On April 30, 2018, the trial court granted the defendant college's motion to transfer, and the case was transferred to the fifth municipal district.

¶ 19        On August 22, 2018, plaintiff again filed a motion for leave to amend his complaint, which was granted by the trial court on September 18, 2018. Plaintiff's *pro se* second amended complaint[3] was similar to his first two complaints in large part but contained additional allegations. Plaintiff alleged that, as a student, he had entered into an implied contract with the defendant college. Plaintiff alleged that this implied contract incorporated the defendant college's sexual discrimination policy, which was "vague, ambiguous and overbroad" in violation of the first amendment. Plaintiff incorporated his prior response to the defendant college's motion to strike to provide examples of the way in which he alleged the policy violated the first amendment, such as the failure to specify exactly what language would be considered inappropriate. Plaintiff also alleged that the defendant college "did not even follow" its policies, "further violating the implied contact" between plaintiff and the defendant college. Plaintiff's prayer for relief sought (1) rescission of the current versions of defendant's code of conduct and sexual discrimination policies, "as any formulation and implementation of contracts of this nature, which serve to subvert the United States Constitution, by a tax payer funded public entity that is bound to uphold the Constitution, is illegal" and (2) actual and punitive damages in the amount of $150,000.

¶ 20        On October 18, 2018, the defendant college filed a combined motion to dismiss plaintiff's second amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)). The defendant college claimed that the complaint should be dismissed under section 2-619(a)(2) of the Code (735 ILCS 5/2-619(a)(2) (West 2016)) because plaintiff lacked standing, since he was not a current student

_____

[3]The record shows that plaintiff never separately filed the second amended complaint, the proposed copy of which was attached to his motion for leave to file it. However, the defendant college filed a motion to dismiss based on the proposed second amended complaint, as though it had been properly filed, and we will likewise treat the proposed second amended complaint as the actual second amended complaint.

and he had not suffered any injury. The defendant college also claimed that, to the extent plaintiff was bringing a due process claim, the complaint should be dismissed under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2016)) because plaintiff had waived his right to due process by refusing to participate in the process offered to him. The defendant college additionally claimed that the complaint should be dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)) because plaintiff had failed to plead sufficient facts to support any of his claims. Finally, the defendant college again asked that plaintiff's request for punitive damages be stricken.

¶ 21        Attached to the motion to dismiss was an affidavit from the dean, who averred that plaintiff was not currently enrolled at the defendant college and that there were no current barriers that would prevent him from enrolling in classes.

¶ 22        On December 7, 2018, plaintiff filed a response to the motion to dismiss, claiming that he had standing, that he had not waived any due process argument, and that the allegations of the second amended complaint stated causes of action for violations of his due process rights and for breach of contract.

¶ 23        On the same day, plaintiff filed a motion for leave to file a *pro se* third amended complaint. The majority of the allegations in the proposed complaint were the same as in his prior complaints but added references to documents produced by the defendant college in discovery, which were attached to the proposed complaint. Plaintiff also added an allegation that he had been deprived of a property interest by the defendant college's actions because he was deprived of the ability to continue with his education with defendant and could no longer utilize his existing credits to receive a degree from the defendant college.

¶ 24        On December 17, 2018, the defendant college filed a motion to strike the proposed third amended complaint, as plaintiff did not have leave to file it.

¶ 25        On January 3, 2019, after a hearing, the trial court entered a memorandum opinion and order granting the defendant college's motion to dismiss plaintiff's second amended complaint. First, the court found that plaintiff did not have standing to contest the defendant college's policies and procedures since he was not enrolled as a student and had not been enrolled since the spring semester of 2017, despite the fact that he had been free to do so. Second, the court found that plaintiff was unable to establish a direct injury to his property or rights, as required for a breach of contract claim, since he was free to register for classes and received only the equivalent of a written warning for his conduct. Third, the court found that there was no dispute that plaintiff had received notice of a hearing and an opportunity to be heard, as well as receiving notice of the decision of the administrator and an opportunity to appeal. The court further found that plaintiff refused to participate in any aspect of the disciplinary process, during which he would have been able to raise his issues, and that "[d]ue process is not denied when a party fails to avail himself of the opportunity to be heard after it is offered to him." Accordingly, the trial court dismissed plaintiff's complaint in its entirety pursuant to section 2-619 and found that it had no need to consider the defendant college's arguments under section 2-615.

¶ 26        The trial court also addressed the defendant college's motion to strike plaintiff's proposed third amended complaint, finding that the new complaint "is identical to his Second Amended Complaint except his new complaint references specific sections of the attached exhibits to his complaint." The court found that, "[o]ther than these references, Plaintiff's claims for relief are identical." Consequently, based on its ruling on defendant's section 2-

619 motion to dismiss, the court struck the proposed third amended complaint and dismissed it with prejudice.

¶ 27        On February 1, 2019, plaintiff filed a notice of appeal.

¶ 28        On February 4, 2019, plaintiff filed a "notice of filing for the preparation of a supplemental record on appeal," which he claimed was pursuant to Illinois Supreme Court Rule 324 (eff. July 1, 2017), as well as a transcript of his discovery deposition[4] and the defendant college's answer to plaintiff's first amended complaint, "in preparation for a supplemental record on appeal."

¶ 29                                ANALYSIS

¶ 30        On appeal, plaintiff takes issue with the trial court's dismissal of his proposed third amended complaint, as well as certain questioning by the defendant college's counsel during his deposition. As an initial matter, the defendant college argues that plaintiff's appeal should be dismissed because of plaintiff's failure to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018). Rule 341(h) governs the contents of the appellant's brief and provides that the brief must contain (1) a statement of points and authorities summarizing the points argued and the authorities cited in the argument section, (2) an introductory paragraph setting forth the nature of the action and of the judgment appealed from, (3) a statement of the issues presented for review, (4) a statement of jurisdiction, (5) the pertinent portions of any statutes involved, (6) a statement of facts, (7) argument, (8) a conclusion, and (9) an appendix. Ill. S. Ct. R. 341(h) (eff. May 25, 2018). Plaintiff's brief omits almost all of these required elements, including only argument, a conclusion paragraph, and an appendix.

---

[4]This is the first time the transcript from plaintiff's deposition appears in the record on appeal.

¶ 31    Furthermore, the argument section of the brief is seriously deficient. Rule 341(h)(7) provides that the argument section "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). While plaintiff includes record citations, there is no citation to any legal authority whatsoever in his brief. The sole authority cited throughout his briefing is a single quotation of the first amendment, which is included in his reply brief.

¶ 32    We recognize that plaintiff is proceeding *pro se* on this appeal. However, when litigants appear *pro se*, their status does not relieve them of their burden of complying with the court's rules. *Oruta v. B.E.W.*, 2016 IL App (1st) 152735, ¶ 30; *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78; *Epstein v. Galuska*, 362 Ill. App. 3d 36, 39 (2005). " 'While this court is not bound to enforce strict, technical compliance with the rules where, despite minor inadequacies in an appellate brief, the basis for an appeal is fairly clear [citation], a party's failure to comply with basic rules is grounds for disregarding his or her arguments on appeal.' " *Oruta*, 2016 IL App (1st) 152735, ¶ 30 (quoting *Epstein*, 362 Ill. App. 3d at 42). Supreme court rules are not advisory suggestions, but rules to be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal. *Oruta*, 2016 IL App (1st) 152735, ¶ 30; *Epstein*, 362 Ill. App. 3d at 42. Accordingly, since plaintiff's brief fails to comply with the requirements of Rule 341, we may, in our discretion, dismiss his appeal. *Fender v. Town of Cicero*, 347 Ill. App. 3d 46, 51 (2004). However, we will proceed to consider plaintiff's arguments, despite the serious deficiencies in his briefing, because the issues presented are easily resolved. See *Fender*, 347 Ill. App. 3d at 51-52 (considering the

appeals despite "glaring" deficiencies in briefing due to the gravity of the allegations and the straightforward issues of law).

¶ 33     This does not mean, however, that both of plaintiff's arguments are properly before this court. On appeal, plaintiff appears to challenge certain lines of questioning asked during his deposition. The defendant college asks us to strike the deposition transcript and any arguments related to it from the record and from plaintiff's brief. As noted, after the trial court's January 3, 2019, order, plaintiff filed a notice of appeal on February 1, 2019. In connection with that appeal, on February 4, 2019, plaintiff filed a "notice of filing for the preparation of a supplemental record on appeal," which indicated that plaintiff intended to file a supplemental record on appeal that contained plaintiff's deposition transcript, which he attached to the notice of filing. We agree with the defendant college that this transcript is not properly before us. It was not presented to the trial court in connection with any matter before it and was not before the trial court at the time it entered its January 3, 2019, order. The first time the transcript appears in the record on appeal is in connection with a notice of filing of a supplemental record.[5] Similarly, the first time plaintiff made any arguments concerning the contents of the deposition is on appeal; plaintiff did not raise any issues with the deposition before the trial court, and the deposition is not an issue in this case. Consequently, we do not consider plaintiff's claims concerning the deposition and consider only the issues that are properly before this court. See *Clark v. Brokaw Hospital*, 126 Ill. App. 3d 779, 784 (1984) (striking deposition transcripts where the depositions were not before the trial court at the time the appealed-from order was entered); *Susman v. North Star*

---

[5]We note that no supplemental record has been filed in the instant appeal.

*Trust Co.*, 2015 IL App (1st) 142789, ¶¶ 41-42 (refusing to consider argument raised for the first time on appeal).

¶ 34    We turn, then, to the remaining issue raised by plaintiff—whether the trial court erred in dismissing his proposed third amended complaint. First, we note that while the parties and the trial court referred to "dismiss[ing]" the third amended complaint, that is not entirely accurate. Plaintiff filed his third amended complaint on December 7, 2018, on the same day as he filed his response to the motion to dismiss. However, at the same time, plaintiff also filed a motion for leave to file an amended complaint. Accordingly, the third amended complaint is technically a *proposed* third amended complaint that plaintiff sought to file, and the trial court's order striking and dismissing it should be considered in that context.[6]

¶ 35    Section 2-616(a) of the Code provides that amendments to complaints may be allowed at any time before judgment, on just and reasonable terms. 735 ILCS 5/2-616(a) (West 2016). The decision to allow an amendment to a pleading rests within the sound discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of that discretion. *Axion RMS, Ltd. v. Booth*, 2019 IL App (1st) 180724, ¶ 26. "A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court." *Axion RMS*, 2019 IL App (1st) 180724, ¶ 26. To determine whether a trial court has abused its discretion, we look to the four factors set out by our supreme court: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed

_____

[6]This, of course, leaves aside the fact that plaintiff never technically filed a separate *second* amended complaint after receiving leave to do so. However, as previously noted, since the defendant college treated the proposed second amended complaint as though it was filed, we continue to do so as well.

amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 36    In the case at bar, the first factor proved dispositive to the trial court—it found that the proposed third amended complaint was "identical to his Second Amended Complaint except his new complaint references specific sections of the attached exhibits to his complaint. Other than these references, Plaintiff's claims for relief are identical." We agree with the trial court that plaintiff's third amended complaint would not have cured the deficiencies of the second amended complaint.

¶ 37    First, to the extent that plaintiff is challenging the defendant college's policies generally, we agree that he lacks standing as he is not currently a student. It is well established that standing requires some injury in fact to a legally cognizable interest. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). "The claimed injury may be actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Glisson*, 188 Ill. 2d at 221 (citing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93 (1988)). In the case at bar, plaintiff is not a student at the defendant college and has not been so since the spring 2017 semester. Accordingly, we agree with the trial court that plaintiff has no legally cognizable interest in the defendant college's policies as a nonstudent. We find unpersuasive plaintiff's claim that he has an interest in the defendant college's policies because his credit hours constitute a property interest. Plaintiff cites no authority for this proposition, and even if his credit hours gave him a sufficient interest in the defendant college's policies for standing purposes, that property interest has not been injured by the defendant college's sexual discrimination policy or its code of conduct. As a

nonstudent, the defendant college's policies would not implicate plaintiff's use of those credits. Consequently, the defects present in the second amended complaint concerning plaintiff's challenge to the defendant college's policies generally are not cured by the allegations contained in the proposed third amended complaint.

¶ 38    Second, with respect to plaintiff's allegations that the defendant college breached its contract with plaintiff though its imposition of sanctions, we again agree with the trial court that plaintiff has not established any injury from the sanctions. As noted, standing requires some injury in fact to a legally cognizable interest. *Glisson*, 188 Ill. 2d at 221. Additionally, injury to the plaintiff is a required element in a breach-of-contract claim. See *Burkhart v. Wolf Motors of Naperville, Inc.*, 2016 IL App (2d) 151053, ¶ 14 (setting forth elements of breach-of-contract cause of action). In the case at bar, plaintiff received a written warning and was ordered to write an essay. When plaintiff did not write the essay, he received a hold on his account for three months, a sanction that could have been avoided had plaintiff complied with the initial sanction. Plaintiff is currently free to register for classes and has been free to do so for nearly two years. We agree with the trial court that plaintiff has not alleged any injury from the imposition of the defendant college's sanction. Plaintiff claims that his injury arises from the fact that he was prevented from registering for three months. However, the dean's May 19, 2017, letter informing plaintiff of the hold specifically noted that the hold would be lifted upon completion of the sanction, meaning that plaintiff had full control over the length of the hold. Accordingly, we find this argument unpersuasive and agree with the trial court that the third amended complaint contains the same deficiencies present in the second amended complaint.

¶ 39        Finally, we agree with the trial court that plaintiff has failed to allege any deprivation of his due process rights. Fundamentally, "[d]ue process of law requires that a party be accorded procedural fairness, *i.e.*, given notice and an opportunity to be heard." *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill. App. 3d 51, 62 (2004); see also *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 28 ("The fundamental requirement of due process is the opportunity to be heard, and that right 'has little reality or worth unless one is informed that the matter is pending.' " (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))). "Due process is a flexible concept, whose requirements depend on the government action at issue and the private interest implicated by that action." *Grimm v. Calica*, 2017 IL 120105, ¶ 21. In the case at bar, it is undisputed that plaintiff received notice of the allegations against him, received notice of the hearing and the opportunity to be present at the hearing, received notice of the results of the hearing, and received notice of his appeal rights, and it is also undisputed that plaintiff affirmatively declined to participate in the proceedings. "Due process is not denied when a party fails to avail himself of the opportunity to be heard after it is offered to him." *In re E.L.*, 152 Ill. App. 3d 25, 33 (1987); see also *First Lien Co. v. Markle*, 31 Ill. 2d 431, 438-39 (1964) (finding that due process was not denied where the defendants had notice of an increased assessment and an opportunity to be heard but "availed themselves of neither right"). Here, plaintiff chose not to participate in the process offered to him, and we agree with the trial court that plaintiff's failure to avail himself of the process offered to him resulted in the waiver of his right to be heard. See *Brooks v. Board of Trustees of the University of Illinois*, 90 Ill. App. 3d 591, 592 (1980) (where the plaintiff failed to appeal parking tickets, finding that "[d]ue process was not denied—it was waived").

¶ 40    In the case at bar, plaintiff's proposed third amended complaint contains the same defects present in his second amended complaint. Consequently, we cannot find that the trial court erred in dismissing the case in its entirety with prejudice.

¶ 41                              CONCLUSION

¶ 42    Plaintiff's third amended complaint did not cure the defects present in the second amended complaint, and the trial court properly dismissed the case in its entirety with prejudice.

¶ 43    Affirmed.

**No. 1-19-0197**

| | |
|---|---|
| **Cite as:** | *Zale v. Moraine Valley Community College*, 2019 IL App (1st) 190197 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-CH-11060; the Hon. John Joseph Hynes, Judge, presiding. |
| **Attorneys for Appellant:** | Joshua Zale, of Oak Lawn, appellant *pro se*. |
| **Attorneys for Appellee:** | John B. Murphey, of Rosenthal, Murphey, Coblentz & Donahue, of Chicago, for appellee. |