NOTICE
Decision filed 08/27/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190312-U

NO. 5-19-0312

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| SCOTT E. MOORE, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 06-D-155 |
| | ) | |
| SHERRI A. MOORE, | ) | Honorable Thomas B. Cannady and |
| | ) | Honorable Stacy L. Campbell, |
| Respondent-Appellant. | ) | Judges, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The order of the circuit court of St. Clair County that granted the petitioner's petition for educational expenses for the parties' nonminor daughter is affirmed because the respondent has not shown any error on the part of the circuit court.

¶ 2    The respondent, Sherri A. Moore (Sherri), appeals the February 4, 2019, order of the circuit court of St. Clair County that granted the petition for educational expenses filed by the petitioner, Scott E. Moore (Scott). For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     Because the record in this case is voluminous, we include here only the facts necessary to our disposition of this appeal, which are as follows. On December 29, 2016, Scott filed the petition for educational expenses that is the subject of this appeal. Therein, he alleged that following his divorce from Sherri, he became the custodial parent to their daughter, Caitlin. He alleged that Caitlin had graduated from high school and enrolled in college. He alleged that Caitlin lived in his home, and that he paid her reasonable living expenses. He listed various expenses that Caitlin had, including for college tuition, fees, and books. He asked the circuit court to order Sherri to contribute to Caitlin's educational expenses.

¶ 5     On February 3, 2017, Sherri filed a response, in which she contended, *inter alia*, that (1) Scott's income far exceeded hers, (2) Scott had the financial ability to completely fund Caitlin's education by himself, (3) Sherri was presently unemployed and lacked the financial means to contribute to Caitlin's education, and (4) Sherri was "working on her education to secure a better future." Additional filings were made by each party, and extensive discovery ensued.

¶ 6     Following several continuations, on June 27, 2018, a hearing was held on Scott's amended petition for educational expenses. Scott appeared with counsel. Sherri appeared *pro se*. Scott testified with regard to his employment status and income. He verified and explained the information found in a financial affidavit, marked as Petitioner's Exhibit 2, that he had completed. It was admitted into evidence without objection. He then verified and explained other financial documents, which were also admitted into evidence without

objection. He also testified with regard to his GI Bill funds.[1] He testified that he was not permitted by law to transfer those funds to Caitlin for her use for her educational expenses, but that if he was permitted to do so, he would. Scott further testified with regard to expenses he incurred by assisting his adult son, and by assisting Caitlin. He testified that he was not aware of any of Caitlin's current expenses that were paid by Sherri. He testified that he took out a loan, with a present balance of $16,739.54, to assist with paying Caitlin's tuition. He authenticated additional financial documents, which included actual amounts he paid to the college, and these documents were admitted into evidence without objection. On cross-examination, Sherri questioned Scott in detail about the numbers in his financial statements and other financial documents.

¶ 7     Thereafter, Sherri testified that she had been unemployed since December 31, 2015, when she retired from the military. She testified that she received a military pension, and since retiring, had completed her bachelor's degree and begun to work on a master's degree. She agreed that she voluntarily did not have a job, but also stated that she had "medical issues." She testified that her pension income was $2089 per month, and was her only income. She testified that, in total, she had three college degrees: one bachelor's degree and two associate's degrees. When asked why she could not get a job to help with Caitlin's college expenses, Sherri testified that she believed she had the right to pursue her master's degree so that she could reach her own career goal of becoming a professor. She agreed that she could transfer her GI Bill benefits to Caitlin, but objected to the court's

---

[1]We use the term "GI Bill funds" as shorthand for the longer title, used by the parties in the circuit court, of "Post-9/11 GI Bill funds."

consideration of that fact, on the basis that federal law stated that such benefits were not to be considered in divorce proceedings. The trial judge stated that he understood Sherri's position, but was overruling her objection to Scott's attorney's question about the fact that Sherri had the ability to voluntarily transfer the benefits to Caitlin, if Sherri wished to do so. He thereafter stated that he was allowing the information into evidence because until he did so, he would "not know the extent of relevancy." When questioned, Sherri agreed that she did not currently pay any of Caitlin's expenses, and did not believe she should be required to contribute to Caitlin's educational expenses. She agreed that she had not taken out any loans to contribute to Caitlin's educational expenses.

¶ 8     The trial judge then questioned Sherri. She testified that her bachelor's degree was in information technology operations management, and that her associate's degrees were in electronic systems and computer systems. She agreed that she was qualified to get a job, but testified that she did not know what kind of salary she could earn, because she wanted to leave the IT field, and believed she had the right to do so. Subsequently, the hearing was recessed.

¶ 9     The hearing reconvened on August 15, 2018. Caitlin testified that she was presently a student in college, and that she worked two part-time jobs, for a total of approximately 35 hours per week, with gross weekly pay of approximately $350 in total. She testified that the only expense of hers that she currently paid was her car insurance. She testified that Scott paid the remainder of her expenses, and that Sherri did not pay any of Caitlin's expenses. On cross-examination, Caitlin agreed that Sherri had offered to let Caitlin live in Sherri's house for free if Caitlin attended college while living in Florida, where Sherri lives,

4

and offered Caitlin a used car that Caitlin could drive. She also agreed that Sherri informed her of free educational opportunities available to Caitlin if Caitlin joined the Air National Guard. On redirect examination, Caitlin testified that she did not wish to live in Florida with Sherri. Thereafter, Scott rested his case.

¶ 10    Sherri called Scott as the first witness in her case in chief. Scott again testified in detail as to his income, expenses, and assets, as well as his contributions to Caitlin's educational expenses. Additional documents were admitted into evidence without objection. Scott also testified again with regard to his GI Bill funds, and reiterated that he did not believe he was permitted by law to transfer his funds for Caitlin's educational expenses. Sherri called Caitlin as her next witness. Caitlin testified as to her income in 2017 and 2018, some of her expenses, and some of her career interests and reasons for pursuing a college degree. Caitlin agreed that Sherri did not have any input into Caitlin's choice of a college or choice of a career.

¶ 11    Thereafter, Sherri asked Caitlin about possible plans to attend law school, at which point the trial judge reminded Sherri that he did not have the authority to order parents to pay for a postgraduate degree, which made her question irrelevant. Sherri argued that it was relevant, because she believed it was "a huge waste" to use her GI Bill funds at Caitlin's current college. The trial judge subsequently stated:

> "I'm not sure I got jurisdiction to order that a party has to transfer these benefits anyway. You guys so choose to do it in lieu of your obligations pursuant to an order of the court, that's your business. I don't think I have the authority. And just to give

5

some guidance to the parties, I don't think I'm going to order either one of you to do it. I don't think that that is within the guise of the statute."

¶ 12    After Caitlin testified, Sherri called herself as a witness. Sherri testified as to the disparity between her income and Scott's income, previous child support she had paid to Scott for the benefit of Caitlin, and other financial information related to her, Scott, and Caitlin. The trial judge allowed Sherri to admit many financial documents into evidence, but stated that he would "still have to review them to see if there is any relevancy." He stated that he would not admit marriage counseling records from the time Scott and Sherri were married unless both consented. Scott's counsel declined to consent, stating that the records were not relevant. Sherri also introduced new financial documents detailing her latest expenses, including travel from Florida to attend hearings in court.

¶ 13    When questioned by the trial judge, Sherri reiterated that her position was that she should have to pay "[n]othing or very little" in terms of Caitlin's educational expenses. When the trial judge asked Sherri how long it would take Sherri to complete Sherri's education, she answered, "I think it will take several years." She subsequently testified that she was not presently taking any classes, because she was "studying the law and researching [her] case." She testified again that she was not employed and had not been employed since the beginning of 2016. She again testified that her pension income was $2089 per month and again discussed her interest in furthering her own education. The trial judge subsequently told Sherri that he understood her position, but that a parent is sometimes required to put the parent's interests "on the back burner" and first provide for the parent's children. He referenced his own children and the sacrifices he made for their

6

education. Sherri noted that during her marriage to Scott, she "was always putting [her] career on the back burner and putting [herself] on the back burner," and that she had made sacrifices. The trial judge responded, "I don't disagree—now keep in mind I didn't say I agree—I don't disagree that that might be a factor." He then stated that he had to decide if he accepted Sherri's decision not to put her interests on the back burner, or if he was going to order her to provide support to assist Caitlin with college.

¶ 14    The trial judge then asked Sherri if she wished to testify about anything else. Sherri testified that she received "30% disability because of insomnia" and had physical issues as a result of anxiety, such as neck problems and leg swelling. The trial judge asked Sherri what other issues she had that affected her employability. Sherri testified, "Right now I'm in a lot of pain and I'm going to physical therapy. I've been going to physical therapy for my neck. I've been going to physical therapy for my hip and legs areas. I have a lot of pain from sitting actually." She testified that her anxiety and other health issues were part of why she wanted to leave the IT field, because IT work was very stressful and made the issues worse.

¶ 15    In closing argument, Scott's counsel urged the trial judge to, *inter alia*, "impute [to Sherri] income at an average base salary of an information technology manager in her area, which on Restore is $97,792." She asked the trial judge to order Sherri to pay a monthly sum of $400 for 48 months, for a total of $19,200, plus one year of tuition, which added another $11,500, for a total amount owed of $30,700. Sherri argued that she should be ordered to contribute a total of "$5,000 or less." The trial judge took the matter under advisement.

¶ 16    On February 4, 2019, the trial judge entered the written order that is the basis of this appeal. Therein, he stated, *inter alia*, that he had reviewed all of the relevant pleadings in the matter, "some voluminous," as well as all of the evidence, testimony, and exhibits. He stated that as to Caitlin's educational expenses, he found "the evidence of [Scott's] case credible." He found Caitlin's expenses to be "between $1800.00 and $1934.25 per month." He found Scott's gross income to be $13,642 per month and Sherri's to be $2089 per month. He found that Sherri was "substantially underemployed and/or unemployed by her own choice," although she "could easily be earning between $10,000 to $20,000 gross income on a survival basis." He thereafter found that Sherri had "not presented credible evidence as to why she [was] unemployed for those periods of time as testified to." The trial judge then ruled that based upon all of the evidence presented, and in light of the factors listed in the relevant statute—found at 750 ILCS 5/513 (West 2018)—Sherri was to pay to Scott $400 per month for the entire year of 2017 (for a total of $4800) and $375 per month from January 1, 2018, through February 28, 2019 (for a total of $5250). He therefore entered judgment for Scott, and against Sherri, for a total of $10,050. He also ordered that beginning on March 1, 2019, and for as long as the conditions specified in the statute were met by Caitlin, Sherri was to pay $375 per month to Scott for Caitlin's educational expenses.

¶ 17    On March 5, 2019, Sherri filed a motion to reconsider. Therein, she alleged, *inter alia*, that subsequent to the hearings in this case, but before the trial judge rendered his decision, Sherri's "home and property were severely damaged on October 10, 2018, by Hurricane Michael, and the expenses greatly exceed the insurance compensation." On June

8

26, 2019, a hearing was held, before a different trial judge, on Sherri's motion to reconsider. Both Scott and Sherri appeared at the hearing *pro se*. The new trial judge explained to them that a hearing on a motion to reconsider is very limited in scope, and stated that she would not "second guess" the previous trial judge's application of the facts that were adduced at trial, as they related to the law, because she was not the judge who heard the evidence as it was presented. Subsequently, she noted that, based upon the previous trial judge's findings with regard to Caitlin's expenses, Sherri was being ordered to pay just over 20% of those expenses. She stated that she believed that was well within the previous trial judge's discretion to order, and amounted to giving Sherri "a break," particularly in light of the fact that, in many cases, each parent is ordered to pay one-third of the child's expenses, with the child being responsible for the other one-third. When asked for his input, Scott stated that he believed that with her motion to reconsider, Sherri was simply seeking a "complete do-over," which he did not believe was fair. After hearing extensive additional input from Sherri, the judge stated that she was denying Sherri's motion in its entirety. Thereafter, she entered a written order in which she denied the motion. This timely appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    We begin by noting a number of problems with Sherri's appellant brief. Her brief does not contain a statement of facts, despite the fact that such a statement is required by Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020). Even more problematically, with regard to many of the issues Sherri appears to be attempting to raise, her brief is devoid of coherent argument that ties the facts of this case to relevant case law and provides an explanation for why she believes she is entitled under the law to the relief she seeks. See

9

Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing). "Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Moreover, it is well established that this court is not a repository into which an appellant may foist the burden of argument and research. See, *e.g.*, *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010).

"We recognize that [the respondent] is proceeding *pro se* on this appeal. However, when litigants appear *pro se*, their status does not relieve them of their burden of complying with the court's rules. [Citations.] ' "While this court is not bound to enforce strict, technical compliance with the rules where, despite minor inadequacies in an appellate brief, the basis for an appeal is fairly clear [citation], a party's failure to comply with basic rules is grounds for disregarding his or her arguments on appeal." ' [Citation.] Supreme court rules are not advisory suggestions, but rules to be followed. [Citation.] Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal. [Citations.]" *Zale v. Moraine Valley Community College*, 2019 IL App (1st) 190197, ¶ 32.

¶ 20 In addition, we note that Scott has not filed an appellee brief in this case. However, under the principles established in *First Capital Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), we nevertheless may address the merits of this appeal if

10

we determine that any of Sherri's contentions that we deem are not forfeited are straightforward enough to be easily decided without the benefit of an opposing brief.

¶ 21 Thus, our first step in this appeal is to determine which of Sherri's arguments, if any, are properly presented, as opposed to being forfeited due to her failure to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). As we do so, we will consider the merits of any arguments that are not forfeited. Although, as noted above, Sherri's presentation of her arguments often lacks coherence, it appears that Sherri contends on appeal that the trial judge erred by (1) relying upon personal beliefs, rather than the law, in reaching his conclusion, (2) imputing income to Sherri, (3) ordering Sherri to pay more than she could afford, (4) considering Sherri's GI Bill funds when determining Sherri's ability to pay, and (5) finding Sherri's evidence to be not credible, while finding Scott's evidence to be credible.

¶ 22 With regard to her first contention—which is that the trial judge relied upon his personal beliefs, rather than the law, in reaching his conclusion—Sherri begins with a citation to Florida law that is irrelevant to this case, then cites general propositions of law related to the equal protection clause of the fourteenth amendment to the United States Constitution, and to section 513 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/513 (West 2018)) and cases interpreting it. Sherri does not, however, make any kind of coherent argument that ties these points of law to her specific argument that the trial judge erred by relying on his personal beliefs. Instead, Sherri simply points out that the trial judge stated that a parent is sometimes required to put the parent's interests "on the back burner," and first provide for the parent's children, and that the trial judge

11

then stated that he had to decide if he accepted Sherri's decision not to put her interests on the back burner, or if he was going to order her to provide support to assist Caitlin with college. Sherri also points out that the trial judge referenced his own children and the sacrifices he made for their education. She then claims that her due process rights were violated, but does not explain how, and provides no case law to support her position. Accordingly, she has forfeited consideration of any constitutional claims in this case. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for a rehearing).

¶ 23    Still with regard to her first contention, Sherri next asserts that Scott would not be harmed if he had to pay "all or most" of Caitlin's college expenses, and that Caitlin would not suffer either. She does not explain how these assertions are relevant, or how they show error on the part of the trial judge, and she provides no citation to any authority that would demonstrate either point. Accordingly, she has forfeited consideration of whatever point she is attempting to make in this part of her brief. See *id*. Next, Sherri, contends that she will suffer "significant harm" under the trial court's ruling. She then discusses many of the facts that were adduced in the trial court. However, she does not provide any coherent argument or citation to authority that would show that the trial court erred. Accordingly, she has forfeited whatever point she is attempting to make in this part of her brief. See *id*. Sherri also contends that the trial judge mentioned that Sherri could use part of her GI Bill funds to pay for Caitlin's expenses, and seems to insinuate that the trial judge somehow

ordered Sherri to do so. The trial judge did not. The mere mention of Sherri having access to GI Bill funds is not the same as the trial judge ordering her to use those funds to assist Caitlin. There is no merit to Sherri's argument to the contrary, as discussed in more detail below. Sherri then provides more facts about the disparity in income between her and Scott, but again does not provide citation to authority or coherent argument as to how she believes the trial judge erred in this case. Accordingly, she has forfeited consideration of whatever point she is attempting to make in this part of her brief. See *id*. At no point does Sherri attempt to explain how the trial judge's reference to his own children demonstrates that he relied upon personal beliefs, rather than the law, in reaching his conclusion, and at no point does she provide any citation to authority with regard to this point. This too is therefore forfeited. See *id*. In sum, all of the points made by Sherri with regard to her first contention are either forfeited or without merit.

¶ 24    With regard to her second contention—which is that the trial judge imputed income to Sherri—Sherri concedes that the trial judge never stated directly that he was imputing income to her, but Sherri contends that "one can deduce such conclusion from the order." She points to the portion of the order where the trial judge stated that he believed that Sherri was "substantially underemployed and/or unemployed by her own choice" and that she "could easily be earning between $10,000 to $20,000 gross income on a survival basis." She also notes that the trial judge stated that Sherri had "not presented credible evidence as to why she [was] unemployed for those periods of time as testified to."

¶ 25    Sherri then recites a number of facts that were adduced in the trial court, but does not connect them to her allegation that the trial judge improperly imputed income to her.

13

She then cites cases from Illinois that she suggests stand for the proposition that a trial judge may not impute income to a party in a case such as this, when determining if the party should be held responsible for some of a nonminor child's college expenses. The first problem for Sherri is that, in this case, there is no clear indication that the trial judge imputed income to her. As she concedes, the trial judge never directly stated that he was imputing income to her, and the mere fact that the trial judge stated that Sherri was "substantially underemployed and/or unemployed by her own choice" and that she "could easily be earning between $10,000 to $20,000 gross income on a survival basis" does not show that he imputed income to her when making his ruling that required Sherri to contribute to Caitlin's educational expenses. The fact that the trial judge stated that Sherri had "not presented credible evidence as to why she [was] unemployed for those periods of time as testified to" also does not show that the trial judge imputed income to her.

¶ 26    In fact, the record shows that the only mention of imputing income at the two hearings in 2018 came from Scott's counsel, who, in her closing argument, urged the trial judge to, *inter alia*, "impute [to Sherri] income at an average base salary of an information technology manager in her area, which on Restore is $97,792." Based upon the fact that Sherri's monthly obligation to assist with Caitlin's educational expenses is less than 20% of Sherri's admitted military pension income of $2089 per month, and covers only approximately 20% of Caitlin's expenses, the evidence strongly suggests that the trial judge rejected Scott's counsel's request to impute income to Sherri, not that he accepted the suggestion and imputed income to Sherri. Although elsewhere in her brief, Sherri contends that her "income and expenses were not disputed," we do not believe that the record

14

necessarily supports her position. We note that the trial judge made a point of ruling that as to Caitlin's educational expenses, he found "the evidence of [Scott's] case credible." He made no such ruling with regard to Sherri's expenses, and expressly found that she lacked credibility when it came to explaining why she could not work. We believe that a reasonable trial judge could have concluded that, regardless of whether Sherri was presently employed, if Sherri made reasonable adjustments to her spending habits, she could afford her $375 monthly obligation to assist Caitlin by using funds from her existing income, which Sherri conceded amounted to over $2000 per month. Accordingly, we reject Sherri's premise that the trial judge imputed income to her, because we do not believe that premise is supported by the facts in the record in this case.

¶ 27    The second problem for Sherri with regard to this argument is that even if this court were to assume, for the sake of argument, that because the trial judge stated that Sherri was "substantially underemployed and/or unemployed by her own choice" and that she "could easily be earning between $10,000 to $20,000 gross income on a survival basis," that means that in making his ruling he imputed income to Sherri in that amount, none of the cases cited by Sherri would prevent the trial judge from doing so under the facts of this case. The published opinion from the Illinois Supreme Court upon which Sherri relies, *In re Support of Pearson*, 111 Ill. 2d 545 (1986), does not discuss the imputation of income at all. The other two decisions cited by Sherri—*In re Marriage of Finke*, 2015 IL App (5th) 140230-U and *In re Marriage of Hill*, 2014 IL App (2d) 140181-U—are unpublished decisions. Pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Jan. 1, 2021), unpublished decisions of the appellate court are "not precedential except to support contentions of double

15

jeopardy, *res judicata*, collateral estoppel or law of the case," although an unpublished decision entered "on or after January 1, 2021, may be cited for persuasive purposes." Accordingly, we decline to consider the contents of these two decisions, other than to note that in *Hill*, the party in question was unemployed through no fault of that party (2014 IL App (2d) 140181-U, ¶ 45), whereas in this case, Sherri admitted that she was qualified to work, but chose not to do so, because, at the time of the hearings, she was "studying the law and researching [her] case," and because she planned to take more classes in the future—which she testified would "take several years"—rather than seeking employment. Sherri cites no published opinions similar to her own situation, and we are aware of none. Accordingly, we find no support for Sherri's argument, even if we assume for the sake of argument that the trial judge imputed income to Sherri in this case.

¶ 28    With regard to her third contention—which is that the trial judge ordered Sherri to pay more than she could afford—Sherri claims that the trial judge made a mistake of law that should undergo *de novo* review by this court, but she never states what that mistake of law was, and cites no authority for the proposition that this point should be reviewed *de novo*. She thereafter concedes that the question of nonminor support is "completely within the trial court's discretion," but does not provide citation to authority for this court's standard of review of an act within the trial court's discretion, and does not argue that the trial court abused its discretion, or if so, how the court did so. Accordingly, Sherri has forfeited consideration of this issue. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We note as well that although it is with regard to this argument that Sherri contends that her "income and expenses were not disputed," as discussed above, we do not believe that the record

16

necessarily supports her position. Further, we note that, forfeiture notwithstanding, as noted above, we believe that a reasonable trial judge could have concluded that, regardless of whether Sherri was presently employed, if Sherri made reasonable adjustments to her spending habits, she could afford her $375 monthly obligation to assist Caitlin by using funds from her existing income, which Sherri conceded amounted to over $2000 per month. Thus, we would find no error even if Sherri had not forfeited this argument.

¶ 29   With regard to her fourth contention—which is that the trial judge erred by considering Sherri's GI Bill funds when determining Sherri's ability to help pay Caitlin's college expenses—Sherri concedes that the trial judge's "order does not explicitly require [Sherri] to use [her GI Bill funds] to pay for the child's education expenses." She argues, however, that "along with employment, it was a primary means addressed at the hearing." Although Sherri provides two citations to federal law which she contends show that her funds are "protected from equitable distribution in civil proceedings," she does not make any coherent argument as to how these principles of federal law would prohibit the trial judge in this case from making passing reference to her funds, particularly where the trial judge's order clearly does not require her to use or not use the funds, and does not transfer or otherwise encumber the funds in any way, and where, on the record, the trial judge stated the following:

> "I'm not sure I got jurisdiction to order that a party has to transfer these benefits anyway. You guys so choose to do it in lieu of your obligations pursuant to an order of the court, that's your business. I don't think I have the authority. And just to give

17

some guidance to the parties, I don't think I'm going to order either one of you to do it. I don't think that that is within the guise of the statute."

Accordingly, Sherri has forfeited consideration of this point. See *id*.

¶ 30　With regard to her final contention—which is that the trial judge erred by finding Sherri's evidence to be not credible, while finding Scott's evidence to be credible—Sherri concedes that this court must give great deference to the trial judge in reviewing such findings. She restates some of the trial judge's findings regarding her evidence, but never explains how this evidence shows that the trial judge erred. She also never sets out, with citation to relevant legal authority, the appropriate standard for this court to determine if the trial court erred, and makes no argument with regard to how that standard is met in this case. With regard to Scott's evidence, she points to an alleged error with regard to Scott's 2017 gross income, but does not explain how this is relevant to her contention that the trial judge erred in his overall conclusions about credibility in this case. Accordingly, she has forfeited consideration of these points as well. See *id*.

¶ 31　　　　　　　　　　　　III. CONCLUSION

¶ 32　For the foregoing reasons, we find that all of Sherri's contentions on appeal are either forfeited or are without merit. Therefore, we affirm the order of the circuit court of St. Clair County.

¶ 33　Affirmed.