2020 IL App (2d) 190588-U
No. 2-19-0588
Order filed March 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| GENE H. SNAPP, JR., | ) | Appeal from the Circuit Court |
| | ) | of Jo Daviess County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE GALENA TERRITORY | ) | No. 19-L-6 |
| ASSOCIATION, INC., SUSAN MILLER, | ) | |
| Individually and as an Employee of the | ) | |
| Galena Territory Association, Inc., JOE | ) | |
| MATTINGLY, Individually and as an | ) | |
| Employee of the Galena Territory Association, | ) | |
| Inc., GALENA TRADING CORPORATION, | ) | Honorable |
| | ) | William A. Kelly, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed the trial court's dismissal of plaintiff's four-count complaint alleging defamation *per se* and breach of fiduciary duty where the alleged defamatory statement was substantially true, and where plaintiff failed to state a claim for breach of fiduciary duty; the appellate court imposed sanctions against plaintiff and his attorneys for bringing a frivolous appeal and prosecuting the appeal in an improper manner.

¶ 2   Plaintiff, Gene H. Snapp Jr., appeals the order of the circuit court of Jo Daviess County

granting defendants', the Galena Territory Association, Inc. (GTA), Susan Miller, Joe Mattingly, and Galena Trading Corporation (GTC), combined motion to dismiss Snapp's verified complaint pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 5/2-619(a)(9) (West 2018)). Snapp argues, *inter alia*, that there are genuine issues of material fact on his claims for defamation *per se* and that he has sufficiently stated claims for breach of fiduciary duty. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4     GTA is the property owner association for all of the more than 4000 properties located within the Galena Territory, which is near the town of Galena in northwestern Illinois. GTC is a wholly-owned subsidiary of GTA. Miller and Mattingly are employees of GTA.

¶ 5     Located within the GTA are eight satellite associations that represent owners of multifamily homes, such as townhouses and condominiums. GTA currently has agreements with each of the satellite associations to serve as its property manager. Eagle Ridge Townhouse Association (ERTA) is one of those satellite associations. ERTA consists of 142 properties and common areas, including 40 acres of private roads, in several subdivisions within the GTA. ERTA funds its operations primarily through annual assessments of its membership and is governed by a board of directors (Board). The Board consists of five elected members who select officers from among their ranks, which include a president, a vice-president, a secretary, and a treasurer. All Board members serve without compensation.

¶ 6     On March 11, 2019, Snapp filed a four-count verified complaint against defendants, alleging defamation *per se* (counts I and III) and breach of fiduciary duty (counts II and IV). The basis for each of the allegations was an annotation (Note 6) to the independent auditor's report (auditor's report) prepared by O'Conner, Brooks & Co., P.C., Certified Public Accountants

(O'Conner & Brooks), on behalf of ERTA. ERTA commissioned O'Conner & Brooks to review its 2016 and 2017 financial statements in order to obtain reasonable assurance that the statements were free of material misstatements. Included in the auditor's report were ERTA's combined 2016 and 2017 balance sheet, statement of revenues, and statement of cash flows. Immediately following these statements were eight notes that provided explanations for the journal entries in the financial statements. Note 6 referred to a journal entry in the statement of revenues, and read: "The Association received a final settlement payment of $150,000 for an insurance claim that was submitted for misconduct of a former board member."

¶ 7    Snapp served as president of the Board from the early 1990s until March of 2011. In the mid-2000s, ERTA member Kenneth Simpson and others began questioning Snapp's leadership. Some of their stated concerns included Snapp using his position as president to hire his own company, Eagle Ridge Townhouse Management (ERTM), as property manager for ERTA, using ERTA funds to purchase equipment for ERTM, and co-mingling funds between ERTA and ERTM. For a full recounting of these facts, see *Eagle Ridge Townhouse Association, Inc. v. Snapp*, 2019 IL App (2d) 180634-U (*Snapp I*) (affirming summary judgment in favor of GTA with respect to Snapp's previous defamation claims).

¶ 8    In light of their continued concerns about Snapp's lack of transparency concerning ERTA finances, Simpson and several of his supporters successfully ran for seats on the Board. In March 2011, Simpson was installed as the new president. Thereafter, Snapp denied the new Board access to ERTA books, and the Board sued him to compel disclosure of records and the return of ERTA equipment. *Snapp I*, 2019 IL App (2d) 180634-U, ¶ 33.

¶ 9    In June 2011, the Board still had no clear picture of ERTA's financial situation. Simpson recommended filing a fidelity insurance claim under ERTA's policy with Philadelphia Insurance

Company (Philadelphia Insurance), which would state that there is "the possibility that someone of trust may have been the direct cause of a loss to the association." The Board unanimously voted to approve filing the fidelity insurance claim.

¶ 10    In November 2011, ERTA filed the fidelity insurance claim with Philadelphia Insurance. The claim was titled "Employee Dishonesty Proof of Loss," and named Snapp as the subject of the claim.   The claim stated that Snapp had been terminated from his position as president in March 2011 for "suspicion of financial fraud and other acts," and that Snapp denied any loss.   On May 5, 2017, Philadelphia Insurance and ERTA executed a settlement agreement.   Without admitting liability or reaching any findings on the merits, Philadelphia Insurance agreed to pay ERTA $150,000 to extinguish the claim.   Page four of the auditor's report contains a single journal entry under the 2017 revenues column reflecting the payment from the settlement agreement: "Insurance claim settlement[,] $150,000."    Note 6 appears on page ten of the auditor's report and reads:   "Insurance Claim Settlement: The Association received a final settlement payment of $150,000 for an insurance claim that was submitted for misconduct of a former board member."

¶ 11    Snapp's verified complaint alleged that defendants published Note 6 with malice and with evil motive when they distributed copies of the auditor's report at ERTA's annual membership meeting on March 10, 2018, and again when they posted the auditor's report on ERTA's private page on GTA's website on August 20, 2018.   In his brief, Snapp asserts that on March 20, 2018, "[d]efendants redacted Note 6 when they re-distributed the 2017 Audited Financial Statement via email and mail to the ERTA homeowners."   He argues that the redaction raises a genuine issue of fact as to whether the statements in Note 6 are substantially true.   In his complaint, Snapp alleged that Note 6 was a "continuing violation" of a defamatory story that he stole $590,000 from

ERTA.   According to Snapp, anyone contemplating entering into an agreement with him would no longer do so, because the statements in Note 6 disparaged his ability and integrity, and imputed that he committed a criminal offense.

¶ 12    On April 18, 2019, defendants filed a combined motion to dismiss Snapp's verified complaint under sections 2-615 and 2-619(a)(9) of the Code.   Defendants argued in part that (1) all counts in the complaint were barred by the affirmative matter that the alleged defamatory statement was substantially true, (2) defendants' release of the auditor's report was conditionally privileged, (3) defendants were not "publishers" under the Communications Decency Act (47 U.S.C. § 230 (2018)), (4) defendants did not owe Snapp a fiduciary duty to investigate the information in the auditor's report, (5) Note 6 was not defamatory because it did not mention Snapp by name, and (6) Snapp failed to state a claim for breach of fiduciary duty because there could be no damages when the statement in Note 6 was not defamatory.   Snapp responded that (1) the "gist" or "sting" of Note 6 was whether the insurance company found that he committed misconduct, which required additional fact finding to determine whether it was substantially true, (2) GTA was not immune under the Communications Decency Act, (3) defendants owed him fiduciary duties, (4) he pleaded sufficient facts to establish that Note 6 referred to him personally, and (5) he pleaded sufficient facts to state a claim for breach of fiduciary duty.

¶ 13    On June 6, 2019, the parties argued their respective positions at a hearing on the combined motion to dismiss.   Snapp emphasized that the redaction in the March 2018 mailing was the key to identifying that Note 6 was not a substantially true statement.   He argued that the redaction was "basically an admission that the statement was not true," and that the redaction "has to be deemed an admission" because defendants would not have redacted Note 6 if it were true.   Snapp further argued that substantial truth was not a defense to a breach of fiduciary duty claim.

¶ 14   The court ruled from the bench, rejecting Snapp's argument that the redaction was an admission of falsehood and granting defendants' combined motion to dismiss:

"I'm going to grant the Motion to Dismiss based on the fact that the statements were true and there is some conjecture here.   Why did they redact or why didn't they?   I don't know.   That doesn't create a substantial basis for this not being true.   It's a true statement that they paid the money and there is not mention of [Snapp] as being the person who was the subject to that.   So I'm going to grant the Motion on the basis that the statement is substantially true."

Upon dismissing the defamation claims with prejudice, the court further stated that it was dismissing the breach of fiduciary duty claims because those claims relied upon the merits of the defamation claims, commenting: "You can't breach a fiduciary duty of something if there is no duty ***."   Without comment, the court additionally denied defendants' request for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).   Thereafter, the court entered a written order that provided:

"Defendants' Combined Motion to Dismiss Plaintiff's Verified Complaint pursuant to 735 ILCS 5/2-619(a)(9) is granted, and it is hereby ORDERED:

(1) counts I, II, III, and IV are dismissed, with prejudice

(2) Defendants' Motion for Sanctions is denied."

Snapp timely appealed.

¶ 15                                II. ANALYSIS

¶ 16   Snapp raises five issues in his challenge to the trial court's order dismissing the verified complaint:   (1) the court erred in granting the combined motion to dismiss under section 2-619(a)(9) because there were genuine issues of material fact as to whether Note 6 was substantially

true, (2) defendants either had no conditional privilege to publish Note 6 or they abused their conditional privilege, (3) defendants were not immune from liability under the Communications Decency Act , (4) Snapp stated a claim for defamation *per se* because a third party would recognize from the face of the complaint that Snapp was the former board member referred to in Note 6, and (5) Snapp stated a claim for breach of fiduciary duty irrespective of whether Note 6 is found to be defamatory. Defendants deny each of Snapp's claims on appeal.

¶ 17    In a combined motion to dismiss, a defendant seeks dismissal under sections 2-615 and 2-619 of the Code. A section 2-615 motion to dismiss challenges the sufficiency of the complaint, whereas a 2-619(a)(9) motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative matter that defeats the cause of action. *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 11. In its ruling from the bench, the trial court articulated reasoning that could be reasonably be interpreted as granting the combined motion under both sections 2-615 and 2-619(a)(9). However, in its accompanying written order, the court indicated that it was dismissing the verified complaint pursuant to section 2-619(a)(9), making no mention of section 2-615. The court did not address the additional arguments in the combined motion to dismiss, such as conditional privilege, or immunity from liability under the Communications Decency Act. Whatever the basis for its ruling, we review the court's ultimate decision, not its reasoning. *Barnes v. Lolling*, 2017 IL App (3d) 150157, ¶ 14). Our review is *de novo* under either section 2-615 or 2-619. *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 11. Because the court stated that it was dismissing the verified complaint pursuant to the affirmative matter argued in the combined motion to dismiss, we begin our analysis based on the constructs of section 2-619(a)(9).

¶ 18    A section 2-619(a)(9) motion to dismiss admits as true all well-pleaded facts, and all reasonable inferences to be gleaned therefrom. *Wackrow v. Niemi*, 231 Ill. 2d 418, 422 (2008). While admitting the truth, the moving party asserts that the claim is nonetheless barred by an affirmative matter that avoids the legal effect of or defeats the claim. *Wackrow*, 231 Ill. 2d at 422; see also 735 ILCS 5/2–619(a)(9) (West 2010). In determining whether to grant or deny a section 2-619 motion to dismiss, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Wackrow*, 231 Ill. 2d at 422.

¶ 19                        A. Defamation *Per Se*

¶ 20    A defamatory statement is one that "harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). To prevail on a claim of defamation, a plaintiff must plead and prove that there was a false and defamatory statement concerning the plaintiff, the defendant made an unprivileged publication of the false statement, and the plaintiff suffered damages as a result of the publication. *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490 (1988). A statement is defamatory *per se* if its harm is obvious and apparent on its face, and damages to the plaintiff's reputation may be presumed. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006).

¶ 21    An allegedly defamatory statement is not actionable if it is substantially true. *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1026 (2001). A defendant raising this defense bears the burden of establishing the "substantial truth" of his or her assertions, which he or she can demonstrate by showing that the "gist" or "sting" of the allegedly defamatory material is true. *Parker*, 324 Ill. App. 3d at 1026. The defense of substantial truth is a question of law when a

court determines that no reasonable jury could find that substantial truth has not been established. *Parker*, 324 Ill. App. 3d at 1026.

¶ 22    The allegations of defamation *per se* in counts I and III were both rooted in Note 6, which provided:   "The Association received a final settlement payment of $150,000 for an insurance claim that was submitted for the misconduct of a former board member."    Snapp contends that the "gist" or "sting" of Note 6 is that ERTA received the payment *because* Snapp committed misconduct as a Board member.   He thus argues that the statement is defamatory because he did not commit misconduct, and that further discovery is required to determine whether the insurance company found that he had committed misconduct.   He supports this argument based largely on the redaction of Note 6 in the March 20, 2018, mailing to ERTA homeowners, arguing that the redaction confirms that defendants knew that the statement was false.   Snapp misconstrues Note 6 and misrepresents the record.

¶ 23    Snapp notes in his brief that the insurance claim was submitted for "suspicion" of misconduct and that it "alleged" misappropriation of funds.   He contends that defendants removed the words "suspected" or "alleged" before the word "misconduct" in Note 6, thereby changing the character of the statement from a claim of wrongdoing to a finding of misconduct. This assertion is without merit; nothing in the language of Note 6 indicates that Philadelphia Insurance made a finding of misconduct about Snapp or anyone else; it merely explains the source of funds for a journal entry.   Moreover, Snapp's interpretation has no factual basis in the record. Snapp cites Note 6 in the auditor's report to support his claim that defendants removed words from the report.   Nothing in the record indicates that Note 6 ever contained the words "suspected" or "alleged" that could have been removed, and nothing in the record identifies GTA, GTC, Miller, or Mattingly, as Note 6's author.   To the contrary, the report indicates that it was authored by

O'Conner & Brooks, which expressed a professional opinion that the financial statements fairly presented the financial position of ERTA in conformity with generally accepted accounting principles. Snapp makes no attempt, either in his complaint or in his appellate brief, to explain how any of the defendants made changes to the auditor's report created by O'Conner & Brooks. Therefore, Snapp's assertion that defendants removed the words "suspected" or "alleged" is not reasonably well grounded in fact.

¶ 24 Snapp further asserts at page 17 of his brief that *defendants redacted Note 6* in the March 20, 2018, mailing, which "raises a genuine issue of fact as to whether the statements in Note 6 are substantially true." The gist of this portion of Snapp's argument is that the redaction reveals defendants' state of mind at the time of the redaction, which was that they knew the statement was false. Similar to Snapp's previous argument, this assertion is likewise without merit and not based on facts in the record. Snapp's contention that defendants redacted Note 6 in the March 20 mailing is contrary to his own sworn statement in his verified complaint, where Snapp twice averred: "[T]he *ERTA Board redacted 'Note 6*—Insurance Claim Settlement' in its entirety." (Emphasis added.) Snapp chose to present his claims of defamation and breach of fiduciary duty in a verified complaint. He is therefore bound by the statements he made in his verified complaint, which became binding judicial admissions that had the effect of withdrawing the facts pleaded from issue. *Axiom RMS, Ltd. V. Booth*, 2019 IL App (1st) 180724, ¶ 28. In the verified complaint, Snapp unequivocally stated that the Board, not defendants, redacted Note 6 in the March 20 mailing. He cannot now create a factual dispute by contradicting his own judicial admission. See *Crittenden v. Cook County Commission on Human Rights*, 2012 IL App (1st) 112437, ¶ 45. Accordingly, there is no factual basis in the record for Snapp's assertion that defendants redacted Note 6.

¶ 25    Even if there were a factual basis to determine that defendants made the redaction, Snapp cites no direct authority that supports his theory that the redaction demonstrates defendants' state of mind.    Instead, he cites two cases where courts cited the defendants' post-publication "retractions" as evidence that they knew the initial statement was false.    See *Clarage v. Kuzma*, 342 Ill. App. 3d 573, 579-81 (2003) (the gist of a letter was still defamatory notwithstanding the defendants' issuance of a retraction acknowledging that statements in the letter were not true); *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 28 (even when defendants retracted the "central allegation" of a report, the "gist" or "sting" of the allegations in the complaint remained substantially true).    A "retraction" is the "taking or drawing back" of a statement or a "statement in recantation" (Black's Law Dictionary 1342 (8th ed. 2004)), whereas a "redaction" is the "careful editing of a document, esp. to remove confidential references or offensive material" (Black's Law Dictionary 1303 (8th ed. 2004)).    In this case, the redaction was the blacking out of the text in Note 6.    This redaction made no attempt to recant the statement, but merely made it unreadable in one of the several versions of the auditor's report released to ERTA members. Whatever the reasoning behind it, this redaction was not akin to the recantations of statements in the cases cited by Snapp.    Thus, Snapp offers no basis in existing law to support his theory that the redaction infers knowledge of untruthfulness, and he makes no argument for an extension or modification of existing law.    Snapp's claim that defendants redacted Note 6 is not grounded in fact and his legal theory that the redaction demonstrated the falsity of Note 6 is not warranted by existing law or a good-faith argument for extension of existing law.

¶ 26    Snapp argues that defendants blocked him from conducting discovery as to the truth or falsity of Note 6 as well as the identity of all of the parties involved in the redaction.    When prosecuting or defending a section 2-619 motion, either party may request additional discovery

pursuant to Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013), such as affidavits, interrogatories, depositions, and production of documents. Snapp made no such request for further discovery below. He cannot now blame defendants for his failure to seek discovery. This assertion is also without merit.

¶ 27 Snapp's attempt to argue the merits of the insurance claim is nothing more than a thinly veiled attempt to relitigate substantially the same claim that was raised and rejected in count V of his fourth amended counterclaim and third-party complaint in *Snapp I*. In *Snapp I*, Snapp alleged that Simpson and the Board defamed him by filing the fidelity insurance claim because it was substantively untrue. The trial court disposed of that claim on a motion for summary judgment.

¶ 28 The plain language of Note 6 is clear, particularly when considered in the context of an explanatory note to a financial statement—there was an insurance claim submitted based on asserted misconduct of a former board member, and ERTA received $150,000 in settlement of the claim. The settlement agreement, executed on May 5, 2017, between Philadelphia Insurance and ERTA, explicitly stated that the settlement was not to be construed as an admission of liability, but merely a compromise of a disputed claim. Note 6 accurately reflects the journal entry in ERTA's 2017 financial statement of the payment that was made in relation to the settlement agreement. Note 6 made no mention of findings of misconduct, and there is no reason to expect that a financial statement such as this one would provide detail about the substantive findings of an insurance claim beyond simply identifying that the claim was settled and the proceeds distributed. Jeremy Woolf, CPA, of O'Conner & Brooks, averred in his affidavit that ERTA, not defendants, "assumed all management responsibilities regarding the preparation of their financial statements and related notes," and that Note 6 was based on the plain language of the settlement agreement. The only conceivable reason to include Note 6 was to explain the source of the funds

in the journal entry. Thus, the statement in Note 6 was substantially, if not entirely true, and no reasonable jury could find otherwise. Moreover, there is nothing in the record to indicate that defendants made any alterations to Note 6 or that they played any part in redacting Note 6. Even had defendants participated in the redaction, Snapp has not presented a cogent argument that a redaction is evidence of defendants' state of mind. Therefore, Snapp's claims that the gist of Note 6 was that he had committed criminal misconduct as a Board member are wholly without merit, with no basis in law or fact. Consequently, we determine that the defamation *per se* claims were barred by the affirmative matter of substantial truth, and the trial court did not err in dismissing counts I and III of Snapp's verified complaint.

¶ 29                                    B. Breach of Fiduciary Duty

¶ 30    To state a claim for breach of fiduciary duty, the plaintiff must allege sufficient facts that (1) a fiduciary duty exists, (2) the fiduciary duty was breached, and (3) the breach was the proximate cause of the plaintiff's injury. *Neade v. Pordes*, 193 Ill. 2d 433, 444 (2000).

¶ 31    In paragraphs 120 and 154 of his verified complaint, Snapp alleged: "As ERTA's property manager, the GTA owed Snapp a fiduciary duty to Snapp to exercise reasonable diligence and due care, and to act in good faith in exercising its duties." Snapp argues that he alleged sufficient facts to establish that defendants owed him a fiduciary duty "to investigate whether the defamatory statement that Snapp had committed misconduct was accurate." In support, Snapp asserts that GTA (Snapp does not mention defendants GTC, Miller, or Mattingly in this portion of his argument), has a fiduciary duty to present accurate financial information pursuant to Section 9:02 of ERTA's By-Laws:

"Within a reasonable time after the close of each fiscal year the Board shall furnish each Owner with a statement of the income and disbursements of the Association for such fiscal year."

By its plain language, section 9:02 imposes a duty on the ERTA Board, not the property manager. Snapp cites Miller's deposition testimony in *Snapp I* as evidence that GTA assented to the fiduciary responsibility of the Board. During her deposition, Miller was asked generally about services that GTA provided to each of the eight homeowner associations within its territory:

"We make sure that they comply with the statutes and their governing documents. For example, most of them require that the members receive financial information at the close of the year. We make sure that is provided."

In his brief, Snapp adds "[ERTA]" to this passage after the word "they," apparently emphasizing that Miller was answering the question in reference to ERTA. By attempting to assign a fiduciary duty to GTA based on this statement, Snapp takes Miller's testimony out of context and imputes meaning that she did not describe. Miller's answer spoke to the services generally offered by GTA to eight different homeowner's associations, not to the specific responsibilities GTA assumed on behalf of ERTA. Moreover, her answer was part of a broader line of questioning that sought to ascertain the overall services provided by GTA to the associations within its territory. Miller was not asked, nor did she answer whether GTA took on the fiduciary responsibilities of the boards of each of those associations. Snapp makes no other attempt to explain why the requirements of the Board in section 9:02 should be extended to GTA, which is not a member of the Board.

¶ 32   Section 9:02 aside, Snapp further argues that GTA took on a portion of the Board's fiduciary responsibilities when it became property manager and, thus, owed him a fiduciary duty as an ERTA member. Snapp cites two cases to support his contention that defendants owe him

a fiduciary duty. In *Board of Managers of Weathersfield Condominium Association v. Schaumburg Limited Partnership*, 307 Ill. App. 3d 614, 622 (1999), that court held that "*association officers and board members* owe a fiduciary duty to the members of the association." (Emphasis added.) In *Boucher v. 111 East Chestnut Condominium Association, Inc.*, 2018 IL App (1st) 162233, ¶¶ 35-36, the court determined that a condominium association's employees and board members owed a fiduciary duty the unit owners when the employees and board members could enter homes without notice to the owners and residents. Both of these cases involved fiduciary duties between condominium association board members, officers, and employees and the condominium owners they served. Defendants are not board members or employees of ERTA. Even assuming that a townhouse association board, such as the ERTA Board, has the same fiduciary duties to its membership as a condominium board, Snapp makes no good-faith argument to extend those fiduciary duties to a property manager. Accordingly, Snapp has failed to allege sufficient facts to demonstrate that defendants owed him a fiduciary duty, which is an essential element of his claim. Thus, Snapp has failed to state a claim for breach of fiduciary duty.

¶ 33    Even had Snapp established that defendants owed him a fiduciary duty to investigate the accuracy of Note 6, the alleged breach was that defendants "should have raised the question of whether the Financial Statement 'Note 6' was true and accurate." As discussed above, Note 6 was a substantially true statement, and there could be no breach for failing to question or discover the falsity of a substantially true statement. See *Sprague v. General Motors Corp.*, 133 F.3d 388, 406 (6th Cir. 1998) ("GM having given out no inaccurate information, there was no breach of fiduciary duty."). Thus, Snapp's claim of breach of fiduciary duty is not grounded in fact or in

law, and he has made no good faith argument for an extension or modification of current law. The trial court did not err in dismissing counts II and IV of the verified complaint.

¶ 34    Because we affirm the trial court's dismissal of the verified complaint based on the substantial truth of Note 6 and Snapp's failure to state a claim for breach of fiduciary duty, we need not address Snapp's additional arguments that defendants had no conditional privilege to publish Note 6, were not immune from liability under the Communication Decency Act, and that Note 6 referred to Snapp as the former board member.

¶ 35                                C. Motion for Sanctions

¶ 36    Defendants request that we impose sanctions against Snapp and his attorneys for filing a frivolous and bad-faith appeal pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994).[1] Rule 375(b) authorizes reviewing courts to impose appropriate sanctions on any party or the attorney or attorneys of the party when an appeal itself is frivolous or when it is not taken in good faith, *i.e.*, when the appeal is brought to harass or needlessly drive up the cost of litigation, or when the manner of prosecuting the appeal is for such purpose.    *Thompson v. Buncik*, 2011 IL App (2d) 100589, ¶ 21.    "An appeal is frivolous where 'it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law.' " *Raymond W. Pontarelli Trust v. Pontarelli*, 2015 IL App (1st) 133138, ¶ 33

---

[1]    Defendants do not request that we review the trial court's denial of their Rule 137 sanctions request, which was based on similar, but not the same grounds as their Rule 375(b) sanctions request.    As such, we express no opinion as to the propriety of the trial court's denial of the Rule 137 sanctions request.

(quoting Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). The committee comments to Rule 375 provide, in part:

> "The determination that an appeal is frivolous or the conduct is improper is based on an objective standard of conduct, *viz.*, an appeal will be found to be frivolous if a reasonable prudent attorney would not in good faith have brought such an appeal, or the appeal conduct will be found to be improper if a reasonable prudent attorney would not have engaged in such conduct." Ill. S. Ct. R. 375, Committee Comments (Aug. 1, 1989); see *Kennedy v. Miller*, 197 Ill. App. 3d 785, 791 (1990) ("We look to the committee comments accompanying Rule 375 for guidance in determining whether defense counsel's misapplication of the law, which resulted in this appeal being pressed, is cause for the imposition of sanctions.").

¶ 37 Defendants allege in their motion for sanctions that Snapp (1) misrepresents that defendants made the redaction to Note 6, (2) misstates the law of defamation *per se*, (3) quotes Miller's deposition testimony out of context, (4) frivolously asserts that GTA was a fiduciary without a legal basis, and (5) argues that defendants blocked his ability to conduct discovery when it was Snapp who failed to request additional discovery. Snapp responds generally that he brought the appeal for a good-faith purpose, which was not to delay, harass, or cause needless expense. He further responds that the arguments in his brief are reasonably well-grounded in fact and warranted by existing law or a good-faith argument.

¶ 38 Snapp is not required to be correct in his view of the law, but he must present an objectively reasonable argument for his views. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 154 (1993). As detailed above, no facts in the record support Snapp's contentions that defendants altered Note 6 in the auditor's report, redacted Note 6, or that Miller's

deposition testimony demonstrated that GTA had a fiduciary duty to ERTA members. Thus, Snapp's arguments in support of his claims for defamation and breach of fiduciary duty are not grounded in facts in the record. Nor are they based on the law as it now stands or a good-faith request to extend or modify the law. Relying only on inapposite cases that discuss retractions rather than redactions, Snapp cited no apposite caselaw or other authority to support his assertion that the redaction was evidence of defendants' knowledge of the falsity of Note 6. Snapp likewise offers no relevant authority for his contention that defendants owed ERTA members a fiduciary duty, citing only clearly distinguishable cases that assign fiduciary duties to condominium association employees and board members. Under these circumstances, Snapp has failed to present objectively reasonable arguments for his views. A reasonable prudent attorney would not have in good faith brought this appeal.

¶ 39    Perhaps as troubling as Snapp's frivolous legal arguments are his misrepresentations of the record before this court. Snapp averred in paragraphs 102 and 131 of his verified complaint that "the *ERTA Board redacted Note 6*" (Emphasis added.). In his brief, Snapp offered alternative facts, stating that "[*d*]*efendants redacted Note 6*" (Emphasis added.), and that we should consider their redaction as evidence of their knowledge of its falsity. After reviewing Snapp's brief, defendants' counsel notified Snapp's attorneys of the discrepancy, stating that he wished to give Snapp an opportunity to withdraw or amend his brief before filing defendants' response. In the email exchange that followed, Snapp's attorneys indicated that they would be filing a motion for leave to amend Snapp's brief. In his motion for leave to amend, Snapp stated that (1) he now believes that defendants participated in redacting Note 6, (2) he had not been able to conduct discovery on that issue, and (3) he wished to amend his brief in a manner that left open the question of who made the redaction. We denied the motion for two reasons: (1) Snapp based his motion

in part on facts not in the record (that defendants participated in the redaction), and (2) despite his grievance that he had not been able to conduct discovery, he made no request for discovery under Rule 191(b) during the proceedings on the combined motion to dismiss. In short, Snapp misrepresented the record before this court. When opposing counsel offered him an opportunity to correct his brief, he still failed to ask this court to amend his brief in a manner that accurately reflected the record.

¶ 40 Not lost on this court is Snapp's recent history of misrepresenting facts in the record. Attorneys James E. Goodman and McKenzie R. Blau, who represent Snapp in this matter, were also attorneys of record in *Snapp I*. In *Snapp I*, we admonished counsel for misrepresenting that GTA typed a number of letters at issue when the record clearly reflected otherwise. *Snapp I*, 2019 IL App (2d) 180634-U, ¶ 80. We further admonished counsel for misrepresenting the content of Miller's deposition testimony, where counsel indicated that Miller testified that she knew the whereabouts of a document, but the record clearly indicated that Miller repeatedly denied having any such knowledge. *Snapp I*, 2019 IL App (2d) 180634-U, ¶ 107.

¶ 41 "This court does not mean to discourage attorneys from zealously representing their clients or from bringing appeals that have even arguable merit." *First Federal Savings Bank of Proviso Tp. v. Drovers National Bank of Chicago*, 237 Ill. App. 3d 340, 347 (1992). For the reasons stated, nothing in the record supports Snapp's claims that defendants altered or redacted Note 6, or even if they had, that it would demonstrate their knowledge of Note 6's falsity. Furthermore, there is no factual basis in the record to sustain Snapp's contention that Miller's deposition testimony described a fiduciary duty between GTA and ERTA members, and Snapp's offers no legal authority that a property manager has the same fiduciary duties as that of an association's board or employees. Accordingly, this appeal is frivolous. Moreover, the misrepresentation of

facts in the record makes the manner of this appeal's prosecution highly improper. Therefore, we agree with defendants that Rule 375(b) sanctions are warranted under these circumstances. We direct defendants to file a statement of reasonable expenses and attorney fees within 14 days. Snapp and his attorneys shall have seven days to file a response. We will thereafter file an order determining the amount of sanctions that will be imposed upon Snapp and his attorneys. *Gilkey v. Scholl*, 229 Ill. App. 3d 989, 994 (1992). We hold in abeyance Attorney McKenzie R. Blau's motion to withdraw her appearance pending our supplemental sanctions order. We dismiss as moot the motions by Snapp and defendants relating to the scheduling oral argument, which were taken with the case.

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court of Jo Daviess County, and sanctions are imposed.

¶ 44    Affirmed; sanctions imposed.